## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1-25-CV-1571-KAS

REGAN BENSON,

      Plaintiff,

v.

ENGLEWOOD, COLORADO, a Colorado municipal corporation,
TAMARA NILES, in her individual and official capacity,
OTHONIEL SIERRA, in his individual and official capacity,
JOE ANDERSON, in his individual and official capacity,
SERGIO RENTERIA, in his individual and official capacity,
BETHANY LAFFERTY, in her individual and official capacity,
CORINNE BARNETT, in her individual and official capacity,
JEAN MULDER, in her individual and official capacity,
AARON GLEE, in his individual and official capacity, and
SHAWN LEWIS, in his individual and official capacity.

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

Defendants, by and through their attorneys, **SGR, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby move the Court for a dismissal of all claims against them as alleged in Plaintiff's Complaint ("Complaint") [ECF No. 1]. In support thereof, Defendants state as follows:

## I.     STATEMENT OF CONFERRAL

Undersigned counsel is not required to confer with Plaintiff. *See* D.C.COLO.LCiv.R 7.1(b)(2) ("Exceptions to the Duty to Confer: … (2) a motion under Fed. R. Civ. P. 12").

## II.     INTRODUCTION

Plaintiff, a self-proclaimed First Amendment auditor, filed this action on May 18, 2025. Plaintiff uses deliberately antagonistic tactics – including harassment, in-person bullying,

cyberbullying, intimidation, and public humiliation – to provoke reactions for sensationalized YouTube content. As detailed below, the Complaint is rife with unfounded and conclusory allegations that the City and its officials sought to punish Plaintiff for purported advocacy of the homeless community. To the contrary, the conduct at issue was lawful and constitutional responses to Plaintiff's ongoing pattern of harassment, intimidation, and repeated refusal to comply with established rules. Per Plaintiff's own statements, this lawsuit is a continuation of her harassment.

## III.    <u>STANDARD OF REVIEW</u>

In order for a complaint to survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), it "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory and formulaic recitations of the elements of a cause of action do not survive a motion to dismiss. *Id.*

## IV.    <u>ARGUMENT</u>

### A.    CLAIMS AGAINST CITY DUPLICATIVE OF OFFICIAL CAPACITY CLAIMS

Plaintiff's official capacity claims against the individual Defendants are duplicative of her claims against the City and should be dismissed on this basis. *Mullins v. City of Colorado Springs*, 575 F. Supp. 3d 1360, 1367 (D. Colo. 2021).

### B.    NO *MONELL* LIABILITY/ OFFICIAL CAPACITY CLAIM

"To succeed on a municipal liability claim, a plaintiff must prove that (1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring." *Walmsley*

*v. Johnson*, No. 24-CV-01425-NYW-SBP, 2025 WL 27375, at \*6 (D. Colo. Jan. 3, 2025) (citations and quotations omitted). "An official policy or custom under Monell may take several forms, including: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Id.*

### 1.    No official custom or policy.

Plaintiff alleges the City has a "custom, policy, or practice of retaliating against Ms. Benson for engaging in speech activity." [Complaint, ¶ 107]. Plaintiff's *Monell* claims against the City and Defendants in their official capacities fail because the Complaint does not plausibly allege the existence of a widespread custom for each similar violation. Plaintiff alleges four categories of customs: (1) the City violated her First Amendment right to be free from retaliatory prosecution on two occasions, (2) the City violated her First Amendment right by excluding her from two areas (library and City Council), (3) City violated her First Amendment right to speak during City Council meetings on October 7, 2024, and January 5, 2025, and (4) the City enacted an overbroad policy with respect to video recording. [Complaint, generally]; *Sodaro v. City & Cnty. of Denver*, 629 F. Supp. 3d 1064, 1081 (D. Colo. 2022) (no widespread practice where Plaintiff alleged a total of eleven incidents more properly placed into four separate categories: (1) incidents related to police action in response to large-scale protests, (2) incidents related to police actions in response to being

3

video recorded by citizens, (3) incidents where individuals were charged with jury tampering, and (4) incidents of alleged retaliatory arrest in violation of the First Amendment); *Connick v. Thompson*, 563 U.S. 51, 62–63 (2011) (incidents to support custom must be similar to the violations at issue).

A maximum of two total events in each category is insufficient to plausibly allege a *Monell* claim. *Sodaro*, 629 F. Supp. at 1081; *Sexton v. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (two alleged incidents, one in 2013 and one in 2019, are insufficient to show a practice so permanent and well settled that it constitutes a custom or usage with the force of law); *Desai v. Garfield Cnty. Gov't*, No. 217CV00024JNPEJF, 2018 WL 1627205, at *7–8 (D. Utah Feb. 16, 2018), (no widespread custom where plaintiff alleged multiple events he perceived as discrimination toward himself but did not offer any evidence "suggesting that similarly situated individuals were mistreated by the municipality in a similar way."). Indeed, Plaintiff alleges these types of incidents rarely occur. [Complaint (¶ 65: "Mr. Ellegan… was not aware of any prohibition on recording others in the public spaces of the Civic Center) (¶ 77: "the Englewood City Council had never interrupted or removed a speaker") (¶ 93: "Englewood police would not normally charge someone with those offenses under similar circumstances")].

Next, in conclusory fashion, Plaintiff alleges Mayor Sierra is the final policymaker for the City with respect to who is permitted to address City Council at public meetings. [Complaint, ¶ 117]. Plaintiff has not met her burden of plausibly alleging (1) Mayor Sierra is not meaningfully constrained by policies not of his making, (2) Mayor Sierra's decision is final – i.e., not subject to any meaningful review, and (3) Mayor Sierra's decision was made within the realm of his grant of authority. *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995). The Complaint does not allege any authority granting Mayor Sierra discretion to determine which citizens are permitted to

speak. To the contrary, Mayor Sierra is not the sole and final decisionmaker of who is permitted to speak at public meetings. Instead, the City of Englewood City Council Policies outline the requirements for who is permitted to speak. *See* City of Englewood City Council Policies[1], effective August 19, 2024, p. 11 (e.g., "a. No person may address City Council or otherwise interrupt a meeting unless and until recognized by the presiding officer… c. No one shall be recognized to speak during public comment if they refuse to provide this information [name and address] to the City Manager's designee prior to public comment on the City Council agenda."). Any discretion afforded to Mayor Sierra during City Council meetings is "subject to Point of Order or Appeal… [a]ny motion "[m]ust be seconded by another member." *See* Public Meeting Procedures[2], p. 1. As such, Plaintiff has not and cannot meet her burden of alleging Mayor Sierra is a final policymaker. *Jantz v. Muci,* 976 F.2d 623, 631 (10th Cir.1992) (school board not liable for school principal's actions because the school board had ultimate legal authority to review decisions involving the hiring and firing of employees); *Ware v. Unified Sch. Dist. No. 492, Butler Cnty., State of Kan.,* 902 F.2d 815, 819 (10th Cir. 1990) (municipality not liable because the superintendent, who fired the plaintiff, was not the final policymaker on personnel matters as he was not vested with such authority and any decisions he made were reviewable by the school board); *Wulf v. City of Wichita,* 883 F.2d 842, 868-869 (10th Cir. 1989) (municipality not liable because the police chief who fired plaintiff was not the final policymaker).

Should any claims against the individual Defendants be dismissed, those claims necessarily

---

[1] *See* City of Englewood City Council Policies,  LINK
This Court may take judicial notice of official, public documents on the City's website without converting this Motion into a motion for summary *Walker v. Van Laningham*, 148 P.3d 391, 397 (Colo. App. 2006); *Shook v. Pitkin Cnty. Bd. of Cnty. Commissioners*, 411 P.3d 158, 181, ¶ 12, Footnote 4 (Colo. App. 2015).
[2] *See* Public Meeting Procedures, LINK

fail against the City. *Gandara v. City of Westminster*, Colorado, No. 1:20-CV-03298-SKC, 2023 WL 3060331, at *4–5 (D. Colo. Apr. 24, 2023) ("It is well established ... that a municipality cannot be held liable under section 1983 for the acts of an employee if [the] employee committed no constitutional violation.") (citations and quotations omitted).

### C.    NO CONSPIRACY CLAIM

Plaintiff brings conspiracy claims against all Defendants but fails to allege specific facts showing agreement and concerted action for each violation alleged, as discussed further in Section D below. There are sparse allegations identifying which Defendant made which statement to whom. As such, Plaintiff's conspiracy claims should be dismissed. *Sutton v. Leeuwen*, 2016 WL 1357743 *7 (D. Colo. April 5, 2016) (citing *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989)) ("district court properly dismissed conspiracy claim where plaintiff failed to allege specific facts showing agreement and concerted action among defendants"); *Banks v. Opat*, 814 F. App'x 325, 337 (10th Cir. 2020) (affirming the district court's determination that "Mr. Banks's conspiracy claim failed because there was neither an underlying unlawful act nor sufficiently pled facts of a conspiracy."). There is a split among the circuits as to whether the intracorporate-conspiracy doctrine applies to § 1983 actions to bar conspiracy claims between a governmental entity and its employees. *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017). This Court should adopt the Supreme Court's reasoning in the *Zigler* case, which is the latest case addressing this issue, and apply the intracorporate-conspiracy doctrine to this matter. *Id.* Further, if any claims against the individual Defendants are dismissed, those claims cannot form the basis for Plaintiff's conspiracy claims. *Marino v. Mayger*, 118 F. App'x 393, 404-405 (10th Cir. 2004).

### D.    LACK OF PERSONAL PARTICIPATION

An overarching problem in the Complaint is its failure to allege personal participation by

each individual Defendant. Many of the allegations are general conclusions rather than specific conduct. [Complaint, ¶ 52 (e.g., "she had the backing of Ms. Niles and the City Attorney's Office in punishing Ms. Benson"). As well, paragraphs 49, 51, 53, 60, 119, 121-124, 126, 128-131, 133, 135-138, 140, 142-145, 147, 149-152, 154-156, 158, 159, 162-164, 166, 167, 170-172, 174, 175, and 178-180 of the Complaint improperly allege collective conduct rather than specifying the conduct of each Defendant. *Robbins*, 519 F.3d at 1250 ("collective" allegations are insufficient). Where a § 1983 plaintiff lodges claims against a government agency and a number of government actors in their individual capacities, the plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *Robbins v. Oklahoma*, 519 F.3d at 1250 (emphasis in original). The only specific facts pled as to City Attorney Niles are that she submitted an inaccurate witness statement related to Plaintiff's exclusion from City Council and testified during the appeal of the City Council exclusion order. [Complaint, ¶¶ 90, 91, and 96]. These allegations are insufficient to establish Niles personally participated in claims one, two, four, six, seven, and eight. The only specific facts pled as to Mayor Sierra are that he interrupted Plaintiff, asked Plaintiff to provide her city of residence, announced that Council members would take a break, announced when Plaintiff's time was up to speak, and did not call on Plaintiff to speak on January 5, 2025 (although we note there was no City Council meeting held on January 5, 2025[3]). [Complaint, ¶¶ 81, 82, 84, 86, and 101]. These allegations are insufficient to establish Sierra personally participated in claims three, four, six, and eight. The only specific facts pled as to Mayor Pro Tem Anderson are that he gave a public interview during which he discussed the City Council's deliberations about preventing the Plaintiff from speaking and suggested City Council take a break

---

[3] *See* Schedule of Meetings, LINK

when he perceived Plaintiff to violate the rules. [Complaint, ¶¶ 78 and 83]. These allegations are insufficient to establish Anderson personally participated in claims three, four, six, and eight. The only specific facts pled as to City Attorney Renteria are that he requested the police department investigate Plaintiff's conduct in harassing Ellegan, that the City Attorney's Office supported punishing Plaintiff, and that he instructed Ellegan to report the harassment. [Complaint, ¶¶ 51, 52, and 55]. These allegations are insufficient to establish Renteria personally participated in claims one, two, six, and seven. The only specific facts pled as to Librarian Lafferty are that she called Plaintiff a known menace and submitted a privacy complaint to YouTube against Plaintiff. [Complaint, ¶¶ 53 and 67]. These allegations are insufficient to establish Lafferty personally participated in claims two, six, and seven. The only specific facts pled as to Librarian Barnett are that she expressed disapproval of Plaintiff's advocacy; this is insufficient to allege she personally participated in any claim. [Complaint, ¶ 53]. The only specific facts pled as to Officer Mulder are that she investigated Plaintiff's harassment of Ellegan and advised the librarians to issue an exclusion order. [Complaint, ¶¶ 52, 53, and 54]. These allegations do not establish Mulder personally participated in claims two and six. The only specific facts pled as to Officer Glee are that he investigated Plaintiff's harassment of Ellegan, authored a probable cause affidavit for Plaintiff's arrest, and authored an arrest warrant. [Complaint, ¶¶ 57 and 92]. These allegations are insufficient to allege Glee personally participated in claims three and six. The only specific fact pled as to City Manager Lewis is that he "enacted" a policy prohibiting video recording; however, they are no facts alleging his specific role in its enactment. Thus, Lewis is not plausibly alleged to have personally participated in any claim. [Complaint, ¶ 102].

### E.     NO OVERBREADTH - VIDEO RECORDING WITHOUT CONSENT POLICY

Plaintiff's tenth claim is against the City and City Manager Lewis for allegedly enacting

an overboard policy on video recording in violation of the First Amendment. [Complaint, ¶¶ 103-104 (*see* policy text)].

The Supreme Court has long established that "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc*., 473 U.S. 788, 799-800 (1985). To determine constitutionality, "a court must identify whether the challenged restrictions impact a public or nonpublic forum, because that determination dictates the extent to which the government can restrict First Amendment activities within the forum." *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016). Next, "courts must determine whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review." *Id.* The Court has identified three types of speech fora: (1) the traditional public forum, (2) the designated public forum, and (3) the nonpublic forum. *Id.* The policy at issue restricts speech in the following City buildings, with exceptions: the Civic Center, Police Department, Pirates Cove Water Park, Malley Recreation Center, Englewood Recreation Center, Public Library, ServiCenter, Allen Water Treatment Plant, and South Platte Renew Wastewater Treatment Plant[4]. Video recording is permitted in rooms for meetings subject to the Colorado Open Meetings Law, of law enforcement and other City public safety officials while performing official duties, security cameras, and recordings specifically authorized or prohibited by law or Court order. The areas restricted by requiring consent before filming are all nonpublic forums where the City either manages its internal operations, are government workplaces, or are only selectively open to community members paying a fee for the enjoyment of unobstructed access to City recreational

---

[4] *See* Video Recording Without Consent policy effective 10/28/24, LINK

9

activities. *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992); *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 216 (2015); *Presnick v. Delaney*, 36 F. App'x 5, 6 (2d Cir. 2002); *Cornelius*, 473 U.S. at 802. None of these areas are intended to be public forums open to expressive activity. In nonpublic fora, restrictions are constitutional so long as they are (1) view-point neutral, and (2) reasonable in light of the purpose served by the forum. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 676 (1998). The restrictions on video recording are view-point neutral given they do not restrict recording based on content of speech and instead restrict all recording. *Id.* at 683. The restrictions are reasonable in order to ensure efficient and orderly operation of City business, ensure employee safety, ensure unobstructed emergency access routes, protect the privacy of members of the public seeking police or municipal assistance, ensure the public's ability to conduct City business, protect the privacy of minors and other patrons, protect recreational environments, protect a quiet and conductive library environment necessary for reading and studying, and protect the security of critical City infrastructure. *See* Video Recording Without Consent policy effective 10/28/24 (Findings of Fact[5]); *See Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 683-684 (1992) (restriction on solicitation reasonable because it limits disruption); *Fams. Achieving Indep. & Respect v. Neb. Dep't of Soc. Servs.*, 111 F.3d 1408, 1419 (8th Cir. 1997) (restriction on expressive activity was reasonable when it limited congestion and disruption in a social services waiting room); *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 650–654 (1981) (government had a legitimate interest in managing the flow of a crowd and maintaining orderly movement); *Hawkins v. City and Cnty. of Denver*, 170 F.3d 1281, 1291 (10th Cir. 1999) (banning

---

[5] Video Recording Without Consent policy effective 10/28/24, LINK

leafletting and picketing in walkway of performing arts complex was constitutional). As such, Plaintiff has not plausibly alleged the Video Recording Without Consent Policy is overbroad.

**F.    NO FIRST AMENDMENT FREE SPEECH VIOLATION**

Claims seven through eight allege free speech violations for exclusion from the library and City Council meetings, and denial of the opportunity to speak at City Council meetings on October 7, 2024, and January 5, 2025. These claims are based on identical allegations to Plaintiff's First Amendment retaliation claims and thus should be dismissed as duplicative. *Weise v. Colo. Springs, Colorado*, 421 F. Supp. 3d 1019, 1039-40 (D. Colo. 2019) (claims for a direct denial of First Amendment rights and retaliation for First Amendment conduct are duplicative when they are based on the same conduct).

**G.    NO FIRST AMENDMENT RETALIATION**

Plaintiff alleges she was retaliated against for her beliefs on the homeless community. [Complaint, p. 2 (Introduction)]. In order to succeed on her retaliation claims Plaintiff must establish three elements: (1) a constitutionally protected activity; (2) government conduct that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the exercise of constitutionally protected activity substantially motivated the defendant's adverse action. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000)). As discussed below, Plaintiff cannot meet all elements for each alleged violation and thus claims one through five should be dismissed.

**1.    Denial of the opportunity to speak at City Council meetings on October 7, 2024, and January 5, 2025.**

As an initial matter, on October 7, 2024, Plaintiff alleges she made her public comment for "approximately four minutes," one minute longer than the three minutes she was entitled to, and that she "left on her own accord." [Complaint, ¶¶ 81, 84-86, and 88]. On January 5, 2025, no City

Council meeting was held. Thus, Plaintiff has not plausibly alleged she was denied the opportunity to speak at either meeting.

Regardless, Plaintiff does not have a constitutional right to speak at these meetings when she repeatedly refuses to provide her general address and is not recognized by the presiding officer. [Complaint, ¶¶ 80-82]. The First Amendment does not establish an absolute right to unlimited speech at City Council meetings. *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 44 (1983). Englewood Municipal Code 1-5-2-9(a) requires those addressing City Council to obtain permission of the presiding officer. Englewood Municipal Code 1-5-2-9(c) requires each person to provide their name and address or cross streets if they are an Englewood resident. Nonresidents are required to provide the City they reside. With these limitations, the City's public comment period is a limited public forum, where the City may impose viewpoint-neutral restrictions that are reasonable in relation to the forum's purpose. Plaintiff does not challenge the constitutionality of these requirements and thus has not plausibly alleged she participated in protected activity. Providing a general address and obtaining permission before speaking would not chill a person of ordinary firmness from speaking. Nor was Plaintiff chilled, given she alleges she attempted to speak again at another meeting after being denied the opportunity to speak on October 7, 2024. [Complaint, ¶ 101]. On May 19, 2025, Plaintiff spoke again at another City Council meeting where she laughed while informing Defendants that her counsel in this matter would "make you cry, repeatedly" and that her intended purpose was to watch them waste their lives[6]. Plaintiff spoke yet again at another City Council meeting on July 21, 2025[7]. Lastly, Plaintiff does not plausibly allege that protected activity motived Defendants to prevent her from speaking. There are no allegations

---

[6] *See* video of May 19, 2025 City Council meeting, LINK
[7] *See* video of July 21, 2025 City Council meeting, LINK

supporting Defendants intended to silence Plaintiff for her views on the homeless community rather than require she follow the rules before speaking.

2.    **Exclusions from library and City Council meetings**.

Plaintiff alleges she was excluded from the library after following Dameyon Ellegan to several different locations over a span over ten minutes, despite that he told her to stop following him. [Complaint, ¶¶ 43, 45 and 60]. Mr. Ellegan is not alleged to be an employee of the City nor is he alleged to have been performing any government function; rather, he is alleged to have been working as a security guard. Harassment is not a constitutionally protected activity. *See* C.R.S. 18-9-111 (a person commits harassment if he or she follows a person in or about a public place). While exclusion from the library would likely chill a person of ordinary firmness from harassment, there are no allegations supporting Defendants intended to prevent Plaintiff from entering the library due to her views on the homeless community rather than to protect the safety of Mr. Ellegan.

Plaintiff alleges she was excluded from City Council meetings for 45 days for violating the City's "Standards of Behavior" during her public comment at the City Council meeting. [Complaint, ¶ 90]. This exclusion was upheld on appeal. [Complaint, ¶ 97]. For the reasons discussed above, Plaintiff's refusal to wait until obtaining permission to speak and repeated refusal to provide a general address violated Englewood Municipal Code § 1-5-2-9(a) and (c) and City of Englewood City Council Policies. The City's Standards of Behavior permit exclusion of up to 45 days for a tier one violation, such as failure to comply with reasonable staff requests or disruptive behavior[8]. Municipal Code requires Plaintiff provide a general address which she refused to do for "months" and to wait until obtaining permission before speaking [Complaint, ¶ 76]. Plaintiff did not have a constitutionally protected interest in attending City Council meetings where she

---

[8] *See* Standards of Behavior, LINK

repeatedly refused to comply with municipal code, the City Council policies, and the Standards of Behavior. A 45-day exclusion from City Council meetings is unlikely to chill a person of ordinary firmness from attending future City Council meetings; and as discussed above, it did not chill Plaintiff from attending meetings. There are no allegations supporting Defendants intended to prevent Plaintiff from attending City Council meetings due to her views on the homeless community rather than to comply with established code, policies, and rules.

### 3.    <u>Prosecutions re: Ellegan harassment and City Council meeting conduct</u>.

To succeed on her retaliatory prosecution claims, Plaintiff must plead she would not have been prosecuted "but for" her beliefs on the homeless community. *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019). Accordingly, Plaintiff must "plead and prove the absence of probable cause for the underlying criminal charge," which she has not done. *Id.*

Plaintiff concedes she followed Mr. Ellegan around for ten minutes while he spoke with a librarian on duty, continued to follow him as he left the library, and finally stopped when Mr. Ellegan was able to escape into an employee-only area. [Complaint, ¶ 45]. Plaintiff concedes Mr. Ellegan told her to stop following him. [Complaint, ¶ 60]. Thus, probable cause existed to believe Plaintiff violated C.R.S. § 18-9-111. [Complaint, ¶ 57 (Plaintiff charged with violation of C.R.S. § 18-9-111]. As to the second prosecution, Plaintiff concedes she refused to provide a general address and video of the October 7, 2024, City Council meeting[9] shows she continued to speak without obtaining permission, in violation of code, policies, and rules. Plaintiff concedes this refusal forced City Council to pause their official duties to figure out how to control the situation. [Complaint, ¶¶ 84-85]. Thus, probable cause existed to believe Plaintiff violated C.R.S. § 18-9-110. [Complaint, ¶ 92 (Plaintiff charged with violation of C.R.S. § 18-9-110)]. As Plaintiff has not

---

[9] *See* video of October 7, 2024 City Council meeting, LINK

pled the absence of probable cause, her retaliatory prosecution claims should be dismissed.

### H.    INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

For the reasons discussed above, Plaintiff cannot establish whether Defendants violated her constitutional rights. Even if Plaintiff was able to establish a constitutional violation, she cannot come forward with any case law standing for the position that Defendants should have known they were violating her rights under the circumstances outlined above. Accordingly, Plaintiff cannot meet either prong of the two-part qualified immunity analysis and her claims against the individual Defendants should be dismissed. *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

**WHEREFORE**, for the reasons stated herein, Defendants respectfully request this Court:

A.    Enter an Order granting their Motion to Dismiss and dismissing the entirety of Plaintiff's claims against them with prejudice;

B.    Enter judgment in favor of Defendants and against Plaintiff;

C.    Entering an Order permitting Defendants to seek recovery of their attorney fees and costs; and

D.    Provide such other and further relief as the Court deems just and proper.

15

Respectfully submitted,


s/ Courtney B. Kramer
**Courtney B. Kramer**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
Email: ckramer@sgrllc.com


s/ Tiffany E. Toomey
**Tiffany E. Toomey**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
Email: ttoomey@sgrllc.com
*Counsel for Defendants*


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 25th day of July, 2025, I electronically filed a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification to the following email addresses:

Jamie H. Hubbard
Carey L. Bell, IV
STIMSON LABRANCHE HUBBARD, LLC
Email: bell@slhlegal.com
Email: hubbard@slhlegal.com
*Attorneys for Plaintiff Regan Benson*


 /s/ Deborah Edwards
Legal Secretary