**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1-25-CV-1571-RMR-KAS

REGAN BENSON,

    Plaintiff,

v.

ENGLEWOOD, COLORADO, a Colorado municipal corporation, et al.

    Defendants.

_____

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**
_____

Defendants, by and through their attorneys, **SGR, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby move the Court for a dismissal of all claims against them as alleged in Plaintiff's First Amended Complaint ("Complaint") [ECF No. 36]. In support thereof, Defendants state as follows:

## I.    STATEMENT OF CONFERRAL

Undersigned counsel conferred with counsel for Plaintiff who opposes the relief requested herein.

## II.    INTRODUCTION

Plaintiff filed her initial Complaint on May 18, 2025 and First Amended Complaint on August 15, 2025. Plaintiff uses deliberately antagonistic tactics – including harassment, in-person bullying, cyberbullying, intimidation, and public humiliation – to provoke reactions for sensationalized YouTube content. As detailed below, the operative Complaint is rife with unfounded and conclusory allegations that the City and its officials

sought to punish Plaintiff for purported advocacy of the homeless community. To the contrary, the conduct at issue was lawful and constitutional responses to Plaintiff's ongoing pattern of harassment, intimidation, obstruction of City business, and repeated refusal to comply with established rules. Per Plaintiff's own statements, this lawsuit is a continuation of her harassment.

### III. STANDARD OF REVIEW

In order for a complaint to survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), it "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory and formulaic recitations of the elements of a cause of action do not survive a motion to dismiss. *Id*.

### IV. ARGUMENT

#### A. CLAIMS AGAINST CITY DUPLICATIVE OF OFFICIAL CAPACITY CLAIMS

Plaintiff's official capacity claims against the individual Defendants are duplicative of her claims against the City and should be dismissed on this basis. *Mullins v. City of Colorado Springs*, 575 F. Supp. 3d 1360, 1367 (D. Colo. 2021).

#### B. NO *MONELL* LIABILITY/ OFFICIAL CAPACITY CLAIM

"To succeed on a municipal liability claim, a plaintiff must prove that (1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury

2

occurring." *Walmsley v. Johnson*, No. 24-CV-01425-NYW-SBP, 2025 WL 27375, at *6 (D. Colo. Jan. 3, 2025) (citations and quotations omitted). "An official policy or custom under Monell may take several forms, including: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Id.*

1. **No official custom or policy.**

Plaintiff alleges the City has a "custom, policy, or practice of retaliating against Ms. Benson for engaging in speech activity." [Complaint, ¶ 112]. Plaintiff's *Monell* claims against the City and Defendants in their official capacities fail because the Complaint does not plausibly allege the existence of a widespread custom for each similar violation. Plaintiff alleges four categories of customs: (1) the City violated her First Amendment right to be free from retaliatory prosecution on two occasions, (2) the City violated her First Amendment right by excluding her from two areas (library and City Council), (3) City violated her First Amendment right to speak during City Council meetings on October 7, 2024, and January 6, 2025[1], and (4) the City enacted an overbroad policy with respect to

---

[1] While Plaintiff additionally argues she was not permitted to speak on November 12 and 15, 2024, no public comment was held on November 12 and no City Council meeting was held on November 15; accordingly, Plaintiff did not have a First Amendment right to speak

3

video recording. [Complaint, generally]; *Sodaro v. City & Cnty. of Denver*, 629 F. Supp. 3d 1064, 1081 (D. Colo. 2022) (no widespread practice where Plaintiff alleged a total of eleven incidents more properly placed into four separate categories: (1) incidents related to police action in response to large-scale protests, (2) incidents related to police actions in response to being video recorded by citizens, (3) incidents where individuals were charged with jury tampering, and (4) incidents of alleged retaliatory arrest in violation of the First Amendment); *Connick v. Thompson*, 563 U.S. 51, 62–63 (2011) (incidents to support custom must be similar to the violations at issue).

A maximum of two total events in each category is insufficient to plausibly allege a *Monell* claim. *Sodaro*, 629 F. Supp. at 1081; *Sexton v. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (two alleged incidents, one in 2013 and one in 2019, are insufficient to show a practice so permanent and well settled that it constitutes a custom or usage with the force of law); *Desai v. Garfield Cnty. Gov't,* No. 217CV00024JNPEJF, 2018 WL 1627205, at *7–8 (D. Utah Feb. 16, 2018), (no widespread custom where plaintiff alleged multiple events he perceived as discrimination toward himself but did not offer any evidence "suggesting that similarly situated individuals were mistreated by the municipality in a similar way."). Indeed, Plaintiff alleges these types of incidents rarely occur. [Complaint (¶ 70: "Mr. Ellegan… was not aware of any prohibition on recording others in the public spaces of the Civic Center) (¶ 81: "the Englewood City Council had never interrupted or

---

on these dates. *See* Agenda for November 12 City Council Study Sessions. LINK to November 12 Agenda. LINK to calendar showing no City Council meeting on November 15. This Court may take judicial notice of official, public documents on the City's website without converting this Motion into a motion for summary *Walker v. Van Laningham*, 148 P.3d 391, 397 (Colo. App. 2006); *Shook v. Pitkin Cnty. Bd. of Cnty. Commissioners*, 411 P.3d 158, 181, ¶ 12, Footnote 4 (Colo. App. 2015).

removed a speaker") (¶ 97: "Englewood police would not normally charge someone with those offenses under similar circumstances")].

Next, Plaintiff alleges Mayor Sierra is the final policymaker for the City with respect to who is permitted to address City Council at public meetings. [Complaint, ¶ 122]. Plaintiff has not met her burden of plausibly alleging (1) Mayor Sierra is not meaningfully constrained by policies not of his making, (2) Mayor Sierra's decision is final – i.e., not subject to any meaningful review, and (3) Mayor Sierra's decision was made within the realm of his grant of authority. *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995). The Complaint provides formulaic recitations of these three elements but does not allege specific authority granting Mayor Sierra sole discretion to determine which citizens are permitted to speak. [Complaint, ¶ 122]. To the contrary, Mayor Sierra is not the sole and final decisionmaker of who is permitted to speak at public meetings. Instead, the City of Englewood City Council Policies outline the requirements for who is permitted to speak. *See* City of Englewood City Council Policies[2], effective August 19, 2024, p. 11 (e.g., "a. No person may address City Council or otherwise interrupt a meeting unless and until recognized by the presiding officer… c. No one shall be recognized to speak during public comment if they refuse to provide this information [name and address] to the City Manager's designee prior to public comment on the City Council agenda."). Any discretion afforded to Mayor Sierra during City Council meetings is "subject to Point of Order or Appeal… [a]ny motion "[m]ust be seconded by another member." *See* Public Meeting Procedures[3], p. 1. As such, Plaintiff has not and cannot meet her burden of alleging Mayor

---

[2] *See* City of Englewood City Council Policies, LINK
[3] *See* Public Meeting Procedures, LINK

5

Sierra is a final policymaker. The Complaint contradictorily alleges City Manager Lewis – not Mayor Sierra – has authority to enact policy under the Englewood Home Charter and Colorado law. [Complaint, ¶ 110]. *Jantz v. Muci,* 976 F.2d 623, 631 (10th Cir.1992) (school board not liable for school principal's actions because the school board had ultimate legal authority to review decisions involving the hiring and firing of employees); *Ware v. Unified Sch. Dist. No. 492, Butler Cnty., State of Kan.,* 902 F.2d 815, 819 (10th Cir. 1990) (municipality not liable because the superintendent, who fired the plaintiff, was not the final policymaker on personnel matters as he was not vested with such authority and any decisions he made were reviewable by the school board); *Wulf v. City of Wichita,* 883 F.2d 842, 868-869 (10th Cir. 1989) (municipality not liable because the police chief who fired plaintiff was not the final policymaker). Further, should any claims against the individual Defendants be dismissed, those claims necessarily fail against the City. *Gandara v. City of Westminster*, Colorado, No. 1:20-CV-03298-SKC, 2023 WL 3060331, at *4–5 (D. Colo. Apr. 24, 2023) ("It is well established ... that a municipality cannot be held liable under section 1983 for the acts of an employee if [the] employee committed no constitutional violation.") (citations and quotations omitted).

    C.    **NO CONSPIRACY CLAIM**

Plaintiff brings conspiracy claims against all Defendants but fails to allege specific facts showing agreement and concerted action for each violation alleged, as discussed further in Section D below. Plaintiff's conspiracy claims should be dismissed as to Defendants Sierra, Anderson, Glee, Lewis, and Watson as Plaintiff has not alleged specific facts showing they engaged in agreement and concerted action. *Sutton v. Leeuwen*, 2016 WL 1357743 *7 (D. Colo. April 5, 2016) (citing *Durre v. Dempsey*, 869

6

F.2d 543, 545 (10th Cir. 1989)); *Banks v. Opat*, 814 F. App'x 325, 337 (10th Cir. 2020). There is a split among the circuits as to whether the intracorporate-conspiracy doctrine applies to § 1983 actions to bar conspiracy claims between a governmental entity and its employees. *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017). This Court should adopt the Supreme Court's reasoning in the *Zigler* case, which is the latest case addressing this issue, and apply the intracorporate-conspiracy doctrine to this matter. *Id.* Further, if any claims against Defendants are dismissed, those claims cannot form the basis for Plaintiff's conspiracy claims. *Marino v. Mayger*, 118 F. App'x 393, 404-405 (10th Cir. 2004).

### D. LACK OF PERSONAL PARTICIPATION

The Complaint fails to allege personal participation by Defendants Sierra and Anderson in claims three, four, and nine. The only specific facts pled as to Mayor Sierra are that he interrupted Plaintiff, asked Plaintiff to provide her city of residence, announced that Council members would take a break, announced when Plaintiff's time was up to speak, and did not call on Plaintiff to speak on January 6, 2025. [Complaint, ¶¶ 85, 86, 88, 90, and 105]. The only specific facts pled as to Mayor Anderson are that he condemned Plaintiff's public records requests, discussed enforcing City Council rules against Plaintiff during meetings, and suggested City Council take a break when he perceived Plaintiff to violate the rules. [Complaint, ¶¶ 43, 83 and 87]. There are no allegations as to how Defendants Sierra and Anderson participated in Plaintiff's prosecution or 45-day exclusion from City Council.

The Complaint fails to allege personal participation by Defendant Watson in any claim as mere service of the library exclusionary notice and signing that it was served is a "ministerial activity," insufficient to support personal participation. [Complaint, ¶¶ 62-64];

*Butterfield v. Garden*, No. 2:12-CV-1043-CW, 2014 WL 4803166, at *3 (D. Utah Sept. 26, 2014) (no personal participation by deputy whose "activities were ministerial only – that is, he dispensed the medication prescribed by others who had the credentials to do so."); *Springer v. Seventh Jud. Dist. Ct.*, 716 F. Supp. 3d 1139, 1159 (D.N.M. 2024) (no personal participation where Defendant Rossignol is alleged to have participated in the issuing of an Order by refusing service or requiring police presence to harass and intimidate plaintiff when he entered District Court house for purpose of conducting court business); *Torres v. City of New York*, No. 20-CV-4007 (BMC), 2022 WL 955152, at *7 (E.D.N.Y. Mar. 30, 2022) ("Although plaintiff contends that they assisted in preparing various reports and paperwork, or that, in the case of Sergeant Chiusano, he signed off on this paperwork, these ministerial and routine actions cannot be said to constitute taking 'an active role in the prosecution.'") (citations omitted).

Collective conduct is insufficient to allege personal participation. The allegations must identify each Defendant's *specific* involvement in *each* violation. *Robbins*, 519 F.3d at 1250 ("collective" allegations are insufficient). Where a § 1983 plaintiff lodges claims against a government agency and a number of government actors in their individual capacities, the plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *Robbins v. Oklahoma*, 519 F.3d at 1250 (emphasis in original).

**E.  NO OVERBREADTH - VIDEO RECORDING WITHOUT CONSENT POLICY**

Plaintiff's eleventh claim is against the City and City Manager Lewis for allegedly enacting an overboard policy on video recording in violation of the First Amendment.

8

[Complaint, ¶¶ 107-108 (*see* policy text)]. As this claim and related facts remain unchanged from Plaintiff's initial Complaint, ECF No. 1, Defendants incorporate the same argument from Section E, pp. 8-11 of their initial Motion to Dismiss, ECF No. 25.

### F. NO FIRST AMENDMENT FREE SPEECH VIOLATION

Claims eight through ten allege free speech violations for exclusion from the library and City Council meetings, and denial of the opportunity to speak at City Council meetings on October 7, 2024, November 12, 2024, November 15, 2024, and January 6, 2025. These claims are based on identical allegations to Plaintiff's First Amendment retaliation claims and thus should be dismissed as duplicative. *Weise v. Colo. Springs, Colorado*, 421 F. Supp. 3d 1019, 1039-40 (D. Colo. 2019) (claims for a direct denial of First Amendment rights and retaliation for First Amendment conduct are duplicative when they are based on the same conduct).

### G. NO FIRST AMENDMENT RETALIATION

Plaintiff alleges she was retaliated against for her beliefs on the homeless community. [Complaint, p. 2 (Introduction)]. In order to succeed on her retaliation claims Plaintiff must establish three elements: (1) a constitutionally protected activity; (2) government conduct that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the exercise of constitutionally protected activity substantially motivated the defendant's adverse action. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000)). As discussed below, Plaintiff cannot meet all elements for each alleged violation and thus claims one through five should be dismissed.

1. **Denial of the opportunity to speak at City Council meetings on October 7, 2024, November 12, 2024, November 15, 2024 and January 6, 2025.**

As an initial matter, on October 7, 2024, Plaintiff alleges she made her public comment for "approximately four minutes," one minute longer than the three minutes she was entitled to, and that she "left on her own accord." [Complaint, ¶¶ 84, 86-90, and 88]. As discussed in Footnote 2 above, no public comment was held on November 12, 2024, and no City Council meeting was held on November 15, 2024. Thus, Plaintiff has not plausibly alleged she was denied the opportunity to speak at these meetings. Plaintiff does not have a constitutional right to speak at City Council meetings when she repeatedly refuses to provide her general address and is not recognized by the presiding officer. [Complaint, ¶¶ 84-86]. While Plaintiff alleges she was initially recognized to speak on October 7, 2024, she also alleges that permission was subsequently revoked when she refused to comply with City Code. [Complaint, ¶¶ 84 and 86]. On January 6, 2025, Plaintiff was not recognized to speak because she refused to provide her address or City of residence. *See* video of January 6, 2025 City Council meeting at 1:25:25[4]. The First Amendment does not establish an absolute right to unlimited speech at City Council meetings. *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 44 (1983). Englewood Municipal Code 1-5-2-9(a) requires those addressing City Council to obtain permission of the presiding officer. Englewood Municipal Code 1-5-2-9(c) requires each person to provide their name and address or cross streets if they are an Englewood resident. Nonresidents are required to provide the City they reside. With these limitations, the City's public comment period is a limited public forum, where the City may impose

---

[4] [LINK](#)

viewpoint-neutral restrictions that are reasonable in relation to the forum's purpose. Plaintiff does not challenge the constitutionality of the requirements to provide a general address and obtain permission before speaking and thus has not plausibly alleged she participated in protected activity. Providing a general address and obtaining permission before speaking would not chill a person of ordinary firmness from speaking. Nor was Plaintiff chilled, given she alleges she attempted to speak again at three meetings after being denied the opportunity to speak on October 7, 2024. [Complaint, ¶ 118 (November 12, 2024, November 15, 2024, and January 6, 2025)]. On May 19, 2025, Plaintiff spoke again at another City Council meeting where she laughed while informing Defendants that her counsel in this matter would "make you cry, repeatedly" and that her intended purpose was to watch them waste their lives[5]. Plaintiff spoke yet again at another City Council meeting on July 21, 2025[6]. Lastly, Plaintiff does not plausibly allege that protected activity motived Defendants to prevent her from speaking. There are no allegations supporting Defendants intended to silence Plaintiff for her views on the homeless community rather than require she follow City Code and established rules before speaking. Notably, Plaintiff has been permitted to present her views on the homeless community on many occasions during City Council meetings. *See* City Council meetings LINK; *see* Complaint, p. 2 (Introduction). No restrictions have ever been placed on Plaintiff when she was in compliance with the rules and City Code. *Id.*

### 2. **Exclusions from library and City Council meetings**.

Plaintiff alleges she was excluded from the library after following Dameyon Ellegan

---

[5] *See* video of May 19, 2025 City Council meeting, LINK
[6] *See* video of July 21, 2025 City Council meeting, LINK

11

to several different locations over a span over ten minutes. [Complaint, ¶¶ 45-47]. Mr. Ellegan is not alleged to be an employee of the City. Plaintiff appears to allege Mr. Ellegan was performing a government function by asking her to sign her name before using the restroom. [Complaint, ¶ 45]. However, the Complaint alleges Mr. Ellegan did not enforce this policy and Plaintiff was permitted to use the restroom without providing her name, was not arrested, and was not searched. [Complaint, ¶ 46]. Accordingly, Mr. Ellegan was not performing any government function when he was harassed by Plaintiff. *Montoya on Behalf of S.M. v. Espanola Pub. Sch. Dist. Bd. of Educ*., No. CV 10-651 WPJ/LFG, 2012 WL 13076310, at *4 (D.N.M. Aug. 23, 2012) ("Some courts hold that the function of a security guard with limited powers is not traditionally the exclusive prerogative of the state, and thus the guard is not performing a public function that would qualify the guard as a state actor. Other courts have held that store security guards engage in a public function, and are therefore state actors when they arrest and search suspects.").

Harassment is not a constitutionally protected activity. *See* C.R.S. § 18-9-111 (a person commits harassment if he or she follows a person in or about a public place). Even if Mr. Ellegan is considered a government actor, Plaintiff's physical obstruction of his ability to remain at his post and perform his duties by chasing him away is not protected speech. *See* C.R.S. § 18-8-102 (obstruction of government function is a criminal act); [Complaint, ¶¶ 45-47].

While exclusion from the library would likely chill a person of ordinary firmness from harassment, there are no allegations supporting Defendants intended to prevent Plaintiff from entering the library due to her views on the homeless community rather than to protect the safety of Mr. Ellegan.

12

Plaintiff alleges she was excluded from City Council meetings for 45 days for violating the City's "Standards of Behavior" during her public comment at the City Council meeting. [Complaint, ¶ 94]. This exclusion was upheld on appeal. [Complaint, ¶ 101]. For the reasons discussed above, Plaintiff's repeated refusal to provide a general address and speaking without permission violated Englewood Municipal Code § 1-5-2-9(a) and (c) and City of Englewood City Council Policies. The City's Standards of Behavior permit exclusion of up to 45 days for a tier one violation, such as failure to comply with reasonable staff requests or disruptive behavior[7]. Municipal Code requires Plaintiff provide a general address which she refused to do for "months" and to have permission to speak [Complaint, ¶ 80]. Plaintiff did not have a constitutionally protected interest in attending City Council meetings where she repeatedly refused to comply with Municipal Code, the City Council policies, and the Standards of Behavior. A 45-day exclusion from City Council meetings is unlikely to chill a person of ordinary firmness from attending future City Council meetings; and as discussed above, it did not chill Plaintiff from attending many subsequent meetings. There are no allegations supporting Defendants intended to prevent Plaintiff from attending City Council meetings due to her views on the homeless community rather than to comply with established code, policies, and rules.

### 3. Prosecutions re: Ellegan harassment and City Council meeting conduct.

To succeed on her retaliatory prosecution claims, Plaintiff must plead she would not have been prosecuted "but for" her beliefs on the homeless community. *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019). Accordingly, Plaintiff must "plead and prove the

---

[7] *See* Standards of Behavior, LINK

13

absence of probable cause for the underlying criminal charge," which she has not done. *Id.* Plaintiff concedes she followed Mr. Ellegan around for ten minutes while he spoke with a librarian on duty, continued to follow him as he left the library, and finally stopped when Mr. Ellegan was able to escape into an employee-only area. [Complaint, ¶ 47]. Thus, probable cause existed to believe Plaintiff violated C.R.S. § 18-9-111. [Complaint, ¶ 59 (Plaintiff charged with violation of C.R.S. § 18-9-111)]. As to the second prosecution, Plaintiff concedes she refused to provide a general address and video of the October 7, 2024, City Council meeting[8] shows she continued to speak after her permission to do so had been revoked, in violation of code, policies, and rules. Plaintiff concedes this refusal forced City Council to pause their official duties to figure out how to control the situation. [Complaint, ¶¶ 84-89]. Plaintiff concedes she was asked to leave the City Council meeting by Mayor Sierra but did not do so. [Complaint, ¶¶ 90-92]. Thus, probable cause existed to believe Plaintiff violated C.R.S. § 18-9-110. [Complaint, ¶ 96 (Plaintiff charged with violation of C.R.S. § 18-9-110)]. Probable cause does not require Plaintiff is convicted of the charged offenses and may rest on an objectively reasonable mistake of law if reasonable minds could differ on the interpretation and it has not been previously construed by the relevant courts. *United States v. Cunningham*, 630 F. App'x 873, 877 (10th Cir. 2015). As Plaintiff has not plausibly alleged the absence of probable cause, her retaliatory prosecution claims should be dismissed.

### H. NO VIOLATION OF COLORADO CONSTITUTIONAL RIGHTS TO FREE SPEECH AND ASSOCIATION.

Plaintiff brings this claim (claim seven) against only Defendants Mulder and Glee.

---

[8] *See* video of October 7, 2024 City Council meeting, LINK

There are no allegations as to with whom Plaintiff was prevented from associating and therefore this portion of claim seven should be dismissed. For the reasons stated above in Section G, Plaintiff's constitutional rights were not violated by Defendants Glee or Mulder given an objectively reasonable officer in their position would find probable cause existed to believe Plaintiff harassed Mr. Ellegan. The statute under which Plaintiff was charged does not require any specific content of speech; rather, it merely requires that she "[f]ollows a person in or about a public place." *See* C.R.S. § 18-9-111(c); [Complaint, ¶ 47, 48, and 59]; *People v. Crawford*, 568 P.3d 426, 433, ¶ 25 (no First Amendment protection where, "It is the fact of, *not the content of*, Crawford's repeated contacts directed to the home, phone, and privacy of the unwilling recipient, A.L., that constitutes the crime of stalking.") (emphasis added) Plaintiff has not challenged the constitutionality of C.R.S. § 18-9-111. Accordingly, Plaintiff's harassment of Mr. Ellegan is not protected speech and this claim should be dismissed.

**I.  INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

For the reasons discussed above, Plaintiff cannot establish whether Defendants violated her constitutional rights. Even if Plaintiff was able to establish a constitutional violation, she cannot come forward with any case law standing for the position that Defendants should have known they were violating her rights under the circumstances outlined above. Accordingly, Plaintiff cannot meet either prong of the two-part qualified immunity analysis and her claims against the individual Defendants should be dismissed. *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). While Defendants Mulder and Glee are not qualifiedly immune from claim seven (Colorado constitutional claim), all other claims against the Individual

15

Defendants are subject to qualified immunity.

**WHEREFORE**, for the reasons stated above, Defendants respectfully request this Court grant their Motion.

Respectfully submitted,

s/ Courtney B. Kramer
**Courtney B. Kramer**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone: (303) 320-0509
Facsimile: (303) 320-0210
Email: ckramer@sgrllc.com

s/ Tiffany E. Toomey
**Tiffany E. Toomey**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone: (303) 320-0509
Facsimile: (303) 320-0210
Email: ttoomey@sgrllc.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 29th day of August, 2025, I electronically filed a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification to the following email addresses:

Jamie H. Hubbard
Carey L. Bell, IV
STIMSON LABRANCHE HUBBARD, LLC
Email: bell@slhlegal.com
Email: hubbard@slhlegal.com
*Attorneys for Plaintiff Regan Benson*

/s/ Tiffany E. Toomey
Attorney

16