**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-CV-1571-RMR-KAS

REGAN BENSON,

      Plaintiff/Counter Defendant,

v.

ENGLEWOOD, COLORADO, a Colorado municipal corporation

and

TAMARA NILES, in her individual and official capacity,
OTHONIEL SIERRA, in his individual and official capacity,
JOE ANDERSON, in his individual and official capacity,
SERGIO RENTERIA, in his individual and official capacity,
BETHANY LAFFERTY, in her individual and official capacity
CORINNE BARNETT, in her individual and official capacity,
JEAN MULDER, in her individual and official capacity,
AARON GLEE, in his individual and official capacity,
CARRIE WATSON, in her individual and official capacity, and
SHAWN LEWIS, in his individual and official capacity.

      Defendants/Counter Claimants.

---

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT**

---

      Plaintiff/Counter Defendant Regan Benson, through counsel, submits this

Response to Defendants' Motion to Dismiss First Amended Complaint filed on August

29, 2025, at Doc. 50.

**Introduction**

      The government cannot stifle speech or punish someone because the

government doesn't like what the person has to say. But that's exactly what happened

here. Plaintiff's detailed Amended Complaint outlines how Defendants have engaged in a lengthy, intentional, and concerted effort to silence her voice and punish her advocacy. First Am. Compl., Doc. 36 ("AC").

In their Motion to Dismiss, Defendants purport to seek dismissal of all of Plaintiff's claims but engage in little analysis or explanation as to the legal basis for dismissal. In responding to this Motion, Plaintiff has attempted to shoehorn Defendants' disparate arguments into a framework that more closely mirrors the elements of the claims asserted. To the extent any argument made herein is unclear, or if the Court has any questions or concerns about the parties' positions, Plaintiff requests a hearing.

## Controlling Law

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In ruling on a Motion to Dismiss brought under Rule 12(b)(6), the Court is confined to the four corners of the complaint and any document attached to or

incorporated by reference into the complaint, and may consider documents referred to the in the complaint which are central to the plaintiff's claim. *See Jackson v. Credit Control, LLC*, Case No. 23-cv-2074-NYW-KAS, 2023 WL 7089902, at *2-3 (D. Colo. Oct. 26, 2023) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). All other documents and materials submitted by the movant must be disregarded. *Id*.

## I.    Plaintiff's First Amendment Retaliation Claims (Claims 1-5) are Cognizable

To state a retaliation claim, Plaintiff must allege (1) she engaged in constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from engaging in that activity, and (3) the defendant's adverse action was substantially motivated as a response to plaintiff's constitutionally protected conduct. *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1280 (D. Colo. 2018). Plaintiff brings claims for First Amendment retaliation related to: her exclusion from the library (Claim 1); the first prosecution (Claim 2); the second prosecution (Claim 3); her exclusion from City Council meetings (Claim 4); and the denial of public comment (Claim 5). As set forth below, Plaintiff has sufficiently stated a First Amendment retaliation claim in each of Claims 1-5.

### A.  Plaintiff Has Alleged Her Ban from the Library was Retaliatory

Defendants argue Plaintiff has failed to allege facts showing that her exclusion from the library was linked to a retaliatory motive rather than "to protect the safety of Mr. Ellegan." Doc. 50 at 12.

First, the idea that Defendants excluded Plaintiff from the library to protect Ellegan's safety finds no support in the Amended Complaint. Because the Court's

review is limited to the four corners of the Amended Complaint, *see Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994), this explanation cannot be considered.

Second, Plaintiff has sufficiently alleged a retaliatory motive to survive a motion to dismiss. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). Plaintiff explicitly alleges that the library exclusion was motivated by Defendants' desire to silence her expressive conduct. AC ¶¶ 50-56. Lafferty confronted Plaintiff while she was passing out constitutions—an undisputedly protected activity—and called her "part of the problem." *Id*. ¶ 50. When deciding to ban her from the library, Lafferty and Barnett expressed disapproval of Benson's advocacy. *Id*. ¶ 55. Lafferty called Plaintiff a "known menace" because she advocates for the homeless population. *Id*. The exclusion was issued within two months of her reporting misconduct related to library bathroom access to public officials, *id*. ¶¶ 37-42, and within a week of her passing out constitutions, *id*. ¶ 63. That Plaintiff's protected activity occurred so close in time to the library exclusion is strong evidence of a retaliatory motive. *Lauck v. Campell Cty.*, 627 F.3d 805, 815 (10th Cir. 2010) (retaliatory motive inferred when acts occurred within three months or less).

Defendants suggest that Ellegan's employment by a private entity rather than the City itself status somehow undermines Plaintiff's retaliatory motive claim. Doc. 50 at 12. It does not. As discussed in the next section, Plaintiff had a right to record Ellegan in public areas of the Civic Center building while he was on the job enforcing City policies. But even if the Court were to conclude otherwise, Plaintiff has alleged that Defendants were motivated to exclude her from the library in retaliation for her passing out constitutions and contacting government officials about City policies, which is undoubtedly protected conduct. *See McIntryre v. Ohio Elections Comm'n*, 514 U.S. 334,

347 (1995) ("No form of speech is entitled to greater constitutional protection" than

leafletting outside a public building); *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir.

2016) (distributing pamphlets directly to members of public is protected activity). Thus,

Plaintiff has sufficiently pled a First Amendment retaliation claim related to her exclusion

from the library.

Defendants also argue the Amended Complaint fails to allege Watson's personal

participation in Claim 1 because her involvement was purely "ministerial." Doc. 50 at 7.

The "ministerial activity" exception does not apply to Watson as she ran the library and

signed and served the exclusion order banning Benson from the library. AC at ¶ 62-64.

Watson's direct involvement in and her authority with respect to barring Plaintiff from the

library distinguishes this case from those cited by Defendants.

### B. Plaintiff's Arrest and Prosecution for Harassment was Retaliatory

The only argument made by Defendants related to Claim 2 is that Plaintiff has

failed to plead an absence of probable cause for her retaliatory arrest. Doc. 50 at 13-14.

However, protected speech cannot form the basis of probable cause. *Mink v. Knox*, 613

F. 3d 995, 1003-04 (10th Cir. 2010) ("It goes without saying that a government official

may not base h[is] probable cause determination on an unjustifiable standard, such as

speech protected by the First Amendment."); *accord Swiecicki v. Delgado*, 463 F.3d

489, 498 (6th Cir. 2006) (holding that "an officer may not base his probable-cause

determination on speech protected by the First Amendment"); *Snider v. City of Cape

Girardeau*, 752 F.3d 1149, 1156-57 (8th Cir. 2014) (finding police officer lacked probable

cause for arrest, even with a warrant, because it is obvious that Missouri's flag

desecration law could not be the basis for arresting an individual for First Amendment protected expressive activity).

Recording the actions of an on-duty government official in a public area is protected First Amendment activity. *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022) ("Filming police and other public officials as they perform their official duties acts as a watchdog of government activity, and furthers debate on matters of public concern."). Moreover, a person may follow a public official in public areas for the purpose of observing and documenting their conduct. *Jordan v. Adams Cty. Sheriff's Office*, 73 F.4th 1162, 1169-70 (10th Cir. 2023) ("Since the First Amendment protects the right to criticize police, then . . . it protects the right to remain in the area to be able to criticize the observable police conduct. Otherwise, an officer could easily stop the protected criticism by simply asking the individual to leave, thereby forcing them to either depart (which would effectively silence them) or face arrest."). Here, Plaintiff recorded Ellegan in public parts of the City building while he was on duty enforcing the library's bathroom rules, which is protected expressive conduct. *Id.* at ¶¶ 34, 37, 40. 47.

Additionally, a reasonable officer would not conclude that there was probable cause to arrest Benson for the events at the library. *Mink*, 613 F.3d at 1003. Colorado's harassment law requires that a person act with the "intent to harass, annoy, or alarm." C.R.S. § 18-9-111(1). The Amended Complaint does not allege or permit the inference that Plaintiff intended to harass, annoy or alarm Ellegan during their interaction. AC ¶¶ 45-47. Plaintiff had previously been informed that patrons would not be denied access to the public bathroom, *id.* ¶¶ 38-39, and only began recording Ellegan after he violated this policy. *Id.* ¶¶ 46-47. Plaintiff often records her interactions in the Civic Center

building to ensure accountability and expose misconduct. *Id*. ¶¶ 26, 29. As pled in the Amended Complaint, Plaintiff's primary purpose for recording these officials is transparency and accountability. *Id*. ¶ 30. No reasonable officer armed with this information would have concluded Plaintiff was acting with the intent to harass, annoy or alarm Ellegan when she recorded him on duty in the Civic Center building.

Lastly, probable cause cannot defeat a First Amendment retaliation claim when it is plausibly alleged that the prosecution was a pretext and similarly situated people with different views wouldn't be charged or prosecuted. *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019). Plaintiff alleges that Englewood police would not normally charge someone for harassment under these circumstances and, in fact, no one else has ever been prosecuted for engaging in that kind of conduct in the Civic Center. AC ¶ 61. As such, even if the Court found probable cause, it is not sufficient to defeat Claim Two.

### C. Plaintiff's Arrest for Disrupting the Council Meeting was Retaliatory

Defendants similarly argue Claim 3 should be dismissed because Defendants had probable cause to believe Plaintiff violated C.R.S. § 18-9-110. Doc. 50 at 14. This argument again ignores the carve-out in *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019) that permits a retaliation claim when a plaintiff plausibly alleges disparate enforcement of the criminal statute. Here, Plaintiff alleges that Englewood would not normally charge someone in these circumstances with a criminal offense. Indeed, the City Attorney admitted under oath that Englewood had never before enforced the requirement that a person provide their address before speaking, showing that no one else had ever been prosecuted under these circumstances. AC ¶¶ 97, 100. As such, the existence of

probable cause does not defeat Plaintiff's retaliation claim related to her second
prosecution.

Moreover, Plaintiff has alleged facts showing that Englewood policy prohibits
interruption by Council members once a recognized speaker has begun speaking. A
violation of C.R.S. § 18-9-110 requires proof Plaintiff willfully interfered with normal
operations of a public meeting. Plaintiff alleges she was recognized to speak by Mayor
Sierra, the presiding officer of the Council meeting, and began speaking before she was
interrupted by the Mayor during her allotted time. AC ¶¶ 83-85. Plaintiff alleges that she
did not accede to Sierra's demand that she stop speaking because it was her public
comment time. *Id*. ¶ 86. Defendants have never taken a break during public comment or
allowed a commenter's actions to disrupt their meeting. *Id*. ¶ 100. Taking these
allegations as true and drawing inferences in Plaintiff's favor, no reasonable officer
would believe Plaintiff's actions constituted a willful attempt to disrupt the meeting. As
such, Defendants have not shown Plaintiff's retaliation claim cannot succeed.

Additionally, as to both Claims 3 and 4, Defendants contend the Amended
Complaint does not allege personal participation by Defendants Sierra and Anderson.
Doc. 50 at 7. "[D]irect participation is not necessary" for "liability under Section 1983."
*Mink*, 613 F. 3d at 1001. It is enough if "the defendant set in motion a series of events
that the defendant knew or reasonably should have known would cause others to
deprive the plaintiff of her constitutional rights." *Id*. "Any official who 'causes' a citizen to
be deprived of her constitutional rights can also be held liable." *Id*.; *see also Wulf v. City
of Wichita*, 883 F.2d 842, 864 (10th Cir.1989) (concluding defendant was sufficiently
involved in decision-making process and thus personally liable where Personnel

Advisory Board listened to defendant's recommendation and, to some extent, relied on it). As to Mayor Sierra, Plaintiff alleges that he stopped her from speaking at a City Council meeting in reliance on a rule that had never been enforced against anyone else. Sierra then called a meeting with the City Council, City Attorney, and police to discuss how to use that rule to retaliate against Plaintiff. After such meeting, Plaintiff was criminally charged and barred from City Council meetings. AC at ¶¶ 85-86, 88, 90, 94-96. Defendant Anderson has publicly expressed his animus towards Plaintiff's advocacy and views and participated in a discussion about applying the address rule to silence Plaintiff. At the Council meeting, Anderson accused Plaintiff of violating the address rule and suggested a break to address this violation, during which it was decided that Englewood would pursue criminal charges and exclude Benson from future meetings. *Id*. at ¶¶ 43, 82, 87-88, 90, 94-97. Plaintiff has sufficiently alleged personal participation by Sierra and Anderson for purposes of the instant Motion.

### D. Plaintiff States a Claim Based on the Council Meeting Exclusion Order

Defendants argue that Plaintiff's retaliation claim related to the 45-day exclusion from Council meetings fails because it did not affect Plaintiff's actions. Doc. 50 at 13. But whether Plaintiff's speech was chilled is immaterial; courts apply an objective standard that "permits a plaintiff who perseveres despite governmental interference to bring suit" but precludes claims based on a "trivial or de minimus injury." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004).

The exclusion order challenged in Claim 4 prevented Plaintiff from attending any City Council meetings or other events held in Council chambers for 45 days. *Id*. ¶ 101. Plaintiff regularly attends and speaks at City Council meetings. AC ¶ 21. Plaintiff was

forced to hire counsel to help her resist the exclusion order. *Id*. ¶ 98. These allegations are sufficient to allege that Defendants' actions would chill a person of ordinary firmness. *See Weise v. Colorado Springs*, 421 F. Supp. 3d 1019, 1046 (D. Colo. 2019) (time and expense of defending administrative action is sufficiently chilling for retaliation claim); *see also Rinne v. Camden Cty.*, 65 F.4th 378, 384 (8th Cir. 2023) (barring citizen from county property would chill person of ordinary firmness).

Defendants also challenge whether Plaintiff has sufficiently alleged a retaliatory motive. Defendants argue the Court should credit their position that Plaintiff's exclusion from Council meetings was due to her failure to provide an address rather than as retaliation for protected speech. Doc. 50 at 13. While Defendants may pursue this theory as the case proceeds, adopting it here would ignore the well-pleaded allegations in Plaintiff's Amended Complaint. Plaintiff has specifically alleged that the exclusion order was issued because Defendants disagreed with the content of her speech and wanted to retaliate against her. AC ¶ 95. Moreover, a plaintiff can show retaliatory motive through evidence of disparate application of a policy. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 462 (10th Cir. 2013) (improper motive inferred from disparate treatment). Plaintiff alleges that she is the only person Englewood's address rule has been enforced against and that other speakers have failed to provide an address and were not barred from speaking. *Id*. ¶¶ 81, 100. Taken together, these allegations are sufficient to allege a retaliatory motive.

### E. Plaintiff Was Denied the Opportunity to Give Public Comment as Retaliation

On Claim 5, Defendants argue Plaintiff was not denied the opportunity to speak at Council meetings but then admit Plaintiff was not called to speak at the January 6

meeting. Doc. 50 at 10. Defendants contend that such exclusion was not retaliatory because it was justified by the address rule. But given that Defendants only apply the address rule against Plaintiff, this proffered non-retaliatory basis does not defeat Plaintiff's claim. *See Cillo*, 738 F.3d at 462.

### F.  Qualified Immunity Does Not Bar Plaintiff's Retaliation Claims

Defendants make a blanket assertion of qualified immunity as to the retaliation claims. Doc. 50 at 15. It is clearly established that Benson's speech was protected by the First Amendment. *McIntryre*, 514 U.S. at 347 ("No form of speech is entitled to greater constitutional protection" than leafletting outside a public building); *Verlo*, 820 F.3d at 1128 (distributing pamphlets directly to members); *Mesa v. White*, 197 F.3d 1041 (10th Cir. 1999) (speech during the citizen communications portion of a City Council meeting); *Irizarry*, 38 F.4th 1282 (recording government officials); *Schneider v. New Jersey*, 308 U.S. 147, 150 (1939) (using the streets or sidewalks to "impart information through speech or the distribution of literature"). It is clearly established that excluding a person from public places or prohibiting them from speaking at public events based on the views that person has expressed or intends to express is violation of the First Amendment. *Mesa*, 197 F.3d at 1047-48.

It is clearly established that retaliating against a person based on the views they have expressed or other protected activity is a violation of the First Amendment. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) ("[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."). *Worrell* explained: "defendant's intent is the key element. An act taken in retaliation for

the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Id*. at 1215 (quotation and citation omitted). The "unlawful intent inherent in such a retaliatory action places it beyond the scope of [an official's] qualified immunity if the right retaliated against was clearly established." *Id*. at 1215-16 (citation omitted). The cases cited above show a reasonable person in Defendants' position would have known that it was unlawful to bar Plaintiff from the library, prevent her from participating in City Council meetings, and undertake two criminal prosecutions for engaging in protected conduct.

### G. Plaintiff Has Sufficiently Pled Municipal Liability Claims

Defendants misapprehend the basis of Benson's municipal liability claims. Benson is not claiming that Englewood has a pattern or practice of retaliating against everyone who exercises their First Amendment rights. That would be a much different case and require a much different set of allegations. Rather, Benson alleges that Englewood has a pattern or practice of retaliating against her specifically for her First- Amendment protected speech.

Other courts have recognized that a pattern of retaliation against a specific individual can support municipal liability. *E.g., Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1276 (D. Colo. 2018). Every case the Defendants cite involves a claim that the municipality has a policy of violating everyone's rights. *See Walmsley v. Johnson*, No. 24-CV-01425-NYW-SBP, 2025 WL 27375, at *6 (D. Colo. Jan. 3, 2025) (a single instance of deliberate indifference in the Boulder jail couldn't establish a municipal policy of deliberate indifference); *Sodaro v. City & Cnty. of Denver*, 629 F. Supp. 3d 1064, 1081 (D. Colo. 2022) (two other incidents involving unrelated people

was insufficient to prove unconstitutional policies); *Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044 (D. Colo. 2021) (two other incidents of retaliatory arrests over a multi-year period were insufficient to establish a municipal policy of retaliatory arrests). *Connick v. Thompson*, 561 U.S. 51 (2011) involved a different theory of municipal liability – failure to train – and concluded a single Brady violation wasn't enough to establish deliberate failure to train.

Plaintiff's allegations are very different from those in the cases relied on by Defendants as she alleges a pattern of retaliation against her individually, a theory of municipal liability that was previously recognized by this Court. *Brandt*, 300 F. Supp. 3d at 1276 (D. Colo. 2018) (reasonable jury could infer from the history of adverse actions and animus against the plaintiff that there was a municipal practice of targeting plaintiff individually). Plaintiff alleges a series of targeted actions against her that demonstrate a pattern or practice of retaliating against her for her First Amendment-protected speech. Englewood banned Plaintiff from the library where she engaged in free speech activities. Englewood charged her with multiple offenses for engaging in First Amendment-protected activity at the library. Englewood charged her with multiple offenses for engaging in First Amendment-protected activity at City Council meetings. On multiple occasions, Englewood made sure that she couldn't speak at City Council meetings. Englewood even passed an ordinance to prohibit her First Amendment-protected recording activity. The fact that Englewood didn't charge or exclude other people who engaged in similar behavior supports the conclusion that Englewood is specifically targeting Plaintiff to suppress her speech and retaliate against her.

Defendants appear to argue that Englewood can't be said to have a policy of retaliating against Benson because Englewood's retaliatory tactics can be broken down into different categories: criminal charges at the library and the City Council meeting; library ban; City Council meeting exclusions; refusal to recognize her during the public comment period at City Council meetings; and an ordinance targeted specifically against her. These facts show that Englewood was both creative and exhaustive in its policy of retaliating against Benson, not, as Defendants claim, that no such policy existed.

Moreover, Plaintiff has also pled municipal liability under the final policy maker theory. Plaintiff has alleged the involvement of Englewood's Mayor, other City Council persons, the City Manager, and the City Attorney, each of whom are final policymakers for different aspects of city government. *See* AC ¶¶ 110, 122, 110. The Amended Complaint specifies that "The Mayor is the Presiding Officer of the City Council," AC ¶ 122, and as Defendants concede, "No person may address City Council or otherwise interrupt a meeting unless and until recognized by the presiding officer." Doc. 50 at 5. Defendants' reliance on materials outside of the pleading is improper and does not undermine these allegations. Plaintiff's allegations regarding Defendant's authority—which must be taken as true on the instant Motion—are sufficient for this stage of the litigation.

## II.    Plaintiff sufficiently alleges a conspiracy claim (Claim 6)

Defendants ask the Court to disregard controlling Tenth Circuit precedent and apply the intracorporate conspiracy doctrine. Doc. 50 at 6. The Tenth Circuit has declined to apply the intracorporate conspiracy doctrine to civil rights claims,

recognizing that the doctrine "should not be construed to permit the same corporation and its employees to engage in civil rights violations." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1127 (10th Cir. 1994). The Supreme Court's decision in *Ziglar* does not affect this binding precedent. 582 U.S. at 154 ("Nothing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation.").

Plaintiffs claim that Benson has not stated a conspiracy claim as to Defendants Sierra, Anderson, Glee, Lewis, and Watson because she fails to allege concerted action. Doc. 50 at 6. A conspiracy claim does not require an "an express agreement among all the conspirators." *Calderón v. City & Cty. of Denver*, No. 18-CV-00756-PAB-MEH, 2023 WL 5348396, at *12 (D. Colo. Aug. 21, 2023) (quoting *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990)). Rather, "it simply must be shown that there was a single plan, the essential nature and general scope of which was know[n] to each person who is to be held responsible for its consequences." *Id.* (quoting *Snell*, 920 F.2d at 702). "Because direct evidence of an agreement to join a conspiracy is rare, a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Id.* at *13 (quoting *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022)). Thus, it was sufficient in *Calderón* for plaintiff to allege that "defendants shared the conspiratorial objective" to retaliate against her, "each defendant took actions intending to terminate [her] contract," and "such actions were taken to retaliate against [her]." *Id.*

Here, Plaintiff has alleged that her views and expressive advocacy were well known to Defendants Sierra, Anderson, Glee, Lewis, and Watson. AC ¶¶ 19-25. She has alleged that they shared the conspiratorial objective of retaliating against her for

those views and that each of those individuals took specific actions to retaliate against her. *Id.* ¶ 159. She has also individually alleged the role each Defendant played in the retaliation and suppression of her First Amendment rights. Sierra, Anderson, and Watson's roles are detailed above. Detective Glee sought Plaintiff's arrest not once, but twice, knowing that the charges were pretextual and that Benson's conduct was protected by the First Amendment. *Id.* at ¶¶ 59, 96-97. Just weeks after Benson defeated Defendant's library exclusion, Lewis enacted a policy targeting Benson's First Amendment-protected recording activity. *Id.* at ¶ 106-10. In each of these instances, the Defendant's assent to the conspiracy's retaliatory objective is demonstrated with either express agreement or can be readily inferred from the Defendant's actions. The motion to dismiss the conspiracy claim should be denied.

### III. Defendants Have Not Shown Claim 7 Should be Dismissed

Benson has alleged that Mulder violated her free speech rights under the Colorado Constitution when Mulder participated in excluding Benson from the library, Doc. 36, ¶¶ 55-56; Mulder violated her free speech rights when Mulder conducted the pretextual investigation into the library incident, *id.* at ¶ 55; and Glee violated Benson's free speech rights when he sought her arrest for her expressive activity at the library, *id.* at ¶ 59. Defendants' only response is that Mulder and Glee had probable cause to believe that Plaintiff had followed Ellegan in a public place, which falls under Colorado's harassment statute and is not First Amendment-protected activity. Doc. 50 at 14. This misses the mark for many reasons. First, the idea that expressive conduct that may be deemed "harassing" is not protected by the First Amendment is contrary to long-standing precedent. *See, e.g., Saxe v. State College*, 240 F.3d 200, 204 (3d Cir. 2001)

("There is no categorical "harassment exception" to the First Amendment's free speech clause). Second, Colorado's harassment statute requires more than following a person; a person must act with "intent to harass, annoy, or alarm." C.R.S. § 18-9-111. No such intent is alleged in the Complaint. AC ¶¶ 45-47. Third, the Complaint doesn't allege that Benson "followed" Ellegan; that is Defendants' assertion. AC ¶¶ 45-47. Finally, the Complaint alleges that Plaintiff moved through the building to record an official working on behalf of the City of Englewood in a public part of a government building, which is First Amendment-protected expressive activity that cannot form the basis for probable cause. *Irizarry*, 38 F.4th 1282.

Benson has also alleged that Glee violated her free speech rights under the Colorado Constitution when sought her arrest for her expressive activity at the City Council meeting. AC ¶¶ 96-97. Defendants do not move to dismiss this allegation. Doc. 50 at 14-15.

**IV. Plaintiff Has Sufficiently Pled First Amendment Violations in Claims 8, 9 and 10**

The only argument raised by Defendants as to Claims 8-10 is that they are "based on identical allegations First Amendment retaliation claims and thus should be dismissed as duplicative." Doc. 50 at 9. This is not correct.

Substantive First Amendment claims and First Amendment retaliation claims are separate and distinct allegations, which have separate elements of proof. First Amendment plaintiffs may assert both a direct claim and a retaliation claim based on the same government conduct. *Irizarry v. City and Cty. of Denver*, 661 F. Supp. 3d 1073, 1091–92 (D. Colo. 2023) (finding First Amendment legal theory distinct from retaliation claim and denying motion to dismiss on basis of duplicative claim); *Sexton v. City of*

*Colorado Springs*, 530 F. Supp. 3d 1044, 1065 (D. Colo. 2021) (declining to dismiss
First Amendment claim as duplicative of First Amendment retaliation claim where police
officer arrested plaintiff after he "flipped off" officer); *Brandt v. City of Westminster*, 300
F. Supp. 3d. 1259, 1281-82 (D. Colo. 2018) (Plaintiff's "parallel claims" for First
Amendment violations and First Amendment retaliation could proceed to trial because
they were separate claims).

A plaintiff states a "direct" claim under the First Amendment when they allege the
government directly interfered with their ability to engage in protected expression. *See
Zorn v. City of Marion*, 774 F. Supp. 3d 1279, 1324 (D. Kan. 2025) (collecting cases).
Here, Plaintiff alleges that Defendants prevented her from exercising her First
Amendment rights when they excluded her from the library, City Council meetings, and
the City Council podium based on the content of her speech. These allegations are
sufficient to state a First Amendment claim. *See Sexton*, 530 F. Supp. 3d at 1065;
*Irizarry*, 661 F. Supp.3d at 1091-92. Defendants have not shown Claims 8-10 should be
dismissed.

### V. Claim 11 Sufficiently Alleges the Recording Policy is Unconstitutional

Defendants' Motion to Dismiss Claim Eleven should be summarily denied
because Defendants do not provide the basis for this request in the Motion. Doc. 50.
Rather, Defendants ask the Court to incorporate and consider the arguments they
previously made in their initial motion to dismiss. *Id.* at 8-9. The Court's practice
standards provide that "each party shall be limited to the filing of a single motion to
dismiss directed at the operative pleading" and shall not exceed the page limitations
without the leave of the Court. RMR Civ. Prac. St. 7.1B(a), 10.1(c)(1).

Beyond this, Defendants' argument suffers many flaws. Their argument rests entirely on their assertion that the Civic Center is a nonpublic forum. Doc. 25 at 9-10. To support this conclusion, Defendants rely entirely on disputed facts not contained in the First Amended Complaint. *Id.* For example, Defendants state the videotaping restriction only applies in "nonpublic forums where the City either manages its internal operations, are government workplaces, or are only selectively open to community members paying a fee." *Id.* at 9. This unsupported position is contrary to Plaintiff's allegation in the Complaint that the prohibition applies everywhere in the Civic Center and other governmental buildings. AC ¶ 106.

Moreover, Defendants' assertion that the policy applies only in a nonpublic forum or limited forum should not be taken at face value. Determining the nature of the forum requires detailed factual analysis that is ill-suited for resolution on a motion to dismiss. *See Doe v. City of Albuquerque*, 667 F.3d 1111, 1128-30 (10th Cir. 2012). At minimum, Plaintiff has alleged sufficient facts to preclude a finding that the policy applies only to nonpublic forum. The Civic Center houses the public library, AC ¶ 18, and libraries have long been held to be public forums. *See Doe*, 667 F.3d at 1128-30 (10th Cir. 2012) (public libraries are designated public forums). The Civic Center contains many government offices and is open to the public to access these services. *Id.* at ¶¶ 20-22. Various public meetings—including meetings not subject to the Open Records Act and therefore falling outside the ordinance's carveout for meetings subject to that Act—are held in the Civic Center building. *Id.* at ¶ 21. Opening spaces to public meetings can create a public forum. *See Widmar v. Vinent*, 454 U.S. 263, 273 (1981) (a university opening its facilities for use by student groups creates a public forum).

Defendants' Motion does not articulate any basis for dismissing Claim 11. To the extent the Court considers Defendants' argument from the superseded motion to dismiss the original complaint, the fact-intensive nature of the public forum inquiry precludes dismissal of this claim. Finally, Plaintiff specifically alleges that the policy was implemented to target her speech, and that the policy is content-based and not tailored to a significant government interest. AC ¶¶ 109, 200-207. As such, Plaintiff has sufficiently pled a claim for overbreadth.

### Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss should be denied.

Dated: September 26, 2025.

Respectfully submitted,

s/ Jamie Hubbard
Jamie Hubbard
Carey Bell
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone/Fax:   720.689.8909
Email:   hubbard@slhlegal.com
bell@slhlegal.com

*Attorneys for Plaintiff Regan Benson*

**Certificate of Service**

I certify that on September 26, 2025, I electronically filed the foregoing *Response to Defendants' Motion to Dismiss First Amended Complaint* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


*s/ Nancy Hickam*
Nancy Hickam, Paralegal