IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1-25-CV-1571-RMR-KAS

REGAN BENSON,

    Plaintiff,

v.

ENGLEWOOD, COLORADO, a Colorado municipal corporation, et al.

    Defendants.

---

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

---

Defendants, by and through their attorneys, **SGR, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby submit their Reply in Support of their Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 50, as follows:

### I.  INTRODUCTION

As discussed below, the Response does not further Plaintiff's claims and therefore Defendants' Motion to Dismiss should be granted. Plaintiff's Response does not organizationally follow Defendants' Motion. This Reply addresses arguments as closely as possible in the sequence they are presented in the Motion.

### II.  ARGUMENT

**A.  CLAIMS AGAINST CITY DUPLICATIVE OF OFFICIAL CAPACITY CLAIMS**

Plaintiff did not respond to this argument and therefore Defendants presume she concedes the same. *Rosales v. Bd. of Regents of the Univ. of Oklahoma*, No. CIV-15-

1

560-R, 2015 WL 4644832, at *1, Footnote 2 (W.D. Okla. Aug. 4, 2015) ("Plaintiff did not directly concede this issue but failed to respond to the argument in the motion to dismiss, and therefore the Court considers the issue conceded."). As a result, the ten official capacity claims asserted against each individual Defendant should be dismissed.

### B.   NO *MONELL* LIABILITY/OFFICIAL CAPACITY CLAIM

The Response does not successfully argue Plaintiff alleged a sufficient number of violations to support a widespread custom (regardless of whether they involved only her or other individuals). The lone case cited by Plaintiff in support – *Brandt* – involves a plaintiff who was cited and arrested for protected speech "twenty-four times." *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1276 (D. Colo. 2018). This is a significantly larger number than the one to two violations in each of the four categories alleged by Plaintiff. [*See* Motion, p. 3 (calculating each violation alleged)].

Although the Response states otherwise, the Complaint does not allege anyone is a final policymaker other than Mayor Sierra. [Complaint, ¶ 122 ("Englewood's Mayor is the final policymaker for the City.")]. Plaintiff cannot allege other Defendants are final policymakers for the first time in her Response. *Motlagh v. Salt Lake City*, No. 2:22-CV-00635, 2023 WL 9065219, at *3 (D. Utah July 5, 2023). Nor does the Complaint allege Sierra was the final policymaker for *each* violation alleged. There are no allegations supporting Sierra had any involvement or policymaking ability in the alleged violations related to Ellegan's harassment (claims 1, 2, 6, and 7). Nor are there any allegations supporting Sierra had involvement or policymaking ability in the alleged violations for Plaintiff's exclusion from City Council and prosecution related to the same (claims 3, 4, 6, 7, 9, and 10). Given the Complaint alleges Lewis has authority to enact policy with

2

regard to claim 11, Plaintiff cannot establish Sierra was the final policymaker for claim 11 either. The Response appears to concede Plaintiff was only prevented from speaking at one City Council meeting – January 6, 2025 (discussed further in Section G, below) (claims 5 and 10). There are no facts supporting the elements Plaintiff is required to plausibly allege to support final policymaking *Monell* liability – (1) Plaintiff has not alleged facts or law supporting Sierra or any other Defendant are not meaningfully constrained by policies, (2) Plaintiff has not alleged facts or law supporting Sierra or any other Defendants' decisions were final and not subject to meaningful review, and (3) Plaintiff has not alleged authority providing Sierra or any other Defendant with the authority to commit the alleged violation. Instead, the Response argues that Defendants cannot cite any material outside of the Complaint. All outside material cited in the Motion are public records accessible on the City's website. As indicated in the Motion, this Court may take judicial notice of these records. *Walker v. Van Laningham,* 148 P.3d 391, 397 (Colo. App. 2006); *Shook v. Pitkin Cnty. Bd. of Cnty. Commissioners,* 411 P.3d 158, 181, ¶ 12, Footnote 4 (Colo. App. 2015).

    C.    **NO CONSPIRACY CLAIM**

Though perhaps unclear from the parties' briefing, the *Ziglar* case did consist of civil rights claims and the Court found the intracorporate conspiracy doctrine barred conspiracy of those claims on the basis that the law was not clearly established, given the division among Courts on this issue. *Ziglar v. Abbasi*, 582 U.S. 120, 155 (2017). Therefore, the *Ziglar* Court found qualified immunity applied, as too should this Court. The Response does not explain specific actions taken by Sierra, Anderson, Glee, Lewis, or Watson to support Plaintiff's conspiracy claims. There are no allegations setting forth

discussions or plans between these Defendants, especially given many of these Defendants are alleged to be involved in separate claims. *Contrast with Bledsoe v. Carreno*, 53 F.4th 589, 609-610 (10th Cir. 2022) (finding conspiracy claim plausibly alleged where plaintiff identified which defendants were present for which discussions, the substance of the discussions, the dates of the statements, and the goals of the conspiracy).

### D.   LACK OF PERSONAL PARTICIPATION

The Response sheds no light on how the Complaint alleges Sierra and Anderson personally participated in Plaintiff's prosecution or 45-day exclusion from City Council. Instead, the Response argues that Sierra stopped Plaintiff from speaking at a City Council meeting in reliance on the address rule, which, as discussed below in Section G, is a temporal impossibility given the exclusion and arrest warrant occurred *before* Plaintiff was not called to speak for failure to provide her address. The Response alleges for the first time that Sierra called a meeting to use the address rule to retaliate against Plaintiff – this is not alleged in the Complaint. The Response next alleges Anderson expressed animus toward Plaintiff. The Response again alleges for the first time that Anderson participated in a discussion about applying the address rule to silence Plaintiff – this is not alleged in the Complaint. The Response again alleges for the first time that Anderson and Sierra decided during a City Council meeting that the City would pursue criminal charges and exclude Plaintiff from meetings – allegations that are not in the Complaint. There are no specific allegations as to how either Sierra or Anderson participated in any exclusion or prosecution of Plaintiff.

The Response argues Watson personally participated because she "ran the

4

library," despite that the Complaint alleges Watson was merely a supervisor. [Complaint, ¶ 13]. The many allegations raised by Plaintiff for the first time in her Response cannot be considered. *Motlagh*, No. 2:22-CV-00635, 2023 WL 9065219, at *3. Contrary to the arguments in the Response, the Complaint does not allege any "direct involvement" by Watson. Instead, the Complaint improperly alleges she engaged in the collective and unspecified conduct of working with others to cause an exclusion notice to be issued. [Complaint, ¶ 62].

### E. NO OVERBREADTH – VIDEO RECORDING WITHOUT CONSENT POLICY

Plaintiff argues the Court should not consider dismissal of claim 11 on the basis that Defendants incorporated argument from their initial Motion to Dismiss, ECF No. 25. Plaintiff provides no support for her position that parties cannot incorporate arguments contained within other court filings; and in fact, undersigned counsel know from experience this occurs on regular bases without issue. *Tal v. Hogan*, 453 F.3d 1244, 1265, Footnote 24 (10th Cir. 2006) ("This allows the court to "take judicial notice of its own files and records, as well as facts which are a matter of public record.") (citations and quotations omitted). Plaintiff next inaccurately argues this Court cannot consider facts outside of the Complaint contained in public records on the City's website. *Id.* While the Response argues videotaping is prohibited in *every* area of the Civic Center, this is not accurate according to the Complaint's allegations in paragraph 107 (*see* exceptions to videorecording policy) and the Administrative Order[1] itself posted on the City's website, which expressly provides for the applicable areas. The Response argues that determining to which forum the Order applies is fact intensive and not suited for a

---

[1] https://www.englewoodco.gov/our-city/policies/video-recording-without-consent

Case No. 1:25-cv-01571-RMR-KAS   Document 75   filed 10/10/25   USDC Colorado
pg 6 of 13

motion to dismiss. However, as the Order expressly provides for the specific areas it applies, dismissal can be considered at this stage. Of the areas the Order applies, the Response only contains argument as to the library and cites one case – *Doe* – to support a library is a public forum. *Doe* does not support that all speech must be permitted in a library. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1130 (10th Cir. 2012) (library is a "limited" or "designated" public forum for "reading, writing, and quiet contemplation"). Plaintiff concedes that she records, "is loud," and "uses coarse language." [*See* Special Motion to Dismiss, ECF No. 52]. Limitations on this type of conduct in a library are constitutional. *Doe*, 667 F.3d at 1129 ("public libraries are not designated for other First Amendment activities, such as speeches or debate").

Though the Response alleges this policy was implemented to target her speech, Plaintiff has not provided any allegations supporting this assertion. Nor does the Complaint allege Lewis, who she alleges enacted the videorecording policy, had any interaction with her other than assuring her he would make sure the public has access to restrooms. [Complaint, ¶ 38]. Plaintiff lastly argues the videorecording policy is content-based but offers no allegations in support of the same. Neither the policy alleged in the Complaint nor the Administrative Order posted on the City's website restrict any speech content. [Complaint, ¶ 107]. Plaintiff additionally offers no allegations supporting her argument that the policy is "not tailored to a significant government interest," given the policy does not restrict reading, writing, or quiet contemplation. *Doe*, 667 F.3d at 1129-1130.

F.  **NO FIRST AMENDMENT FREE SPEECH VIOLATION**

Plaintiff appears to argue her free speech claims (claims 8-10) are not duplicative

of her retaliation claims on the basis that she is permitted to plead the same facts to support both claims. In support, Plaintiff cites three cases: *Irizarry, Sexton,* and *Brandt.* However, none of these cases support this position. Instead, these cases require a "distinct basis" between the claims in order to avoid duplicity. *Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1092 (D. Colo. 2023) ("Mr. Irizarry has pled a distinct basis for claim five."); *Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1065 (D. Colo. 2021) (same); *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1282 (D. Colo. 2018) (same). A distinct basis does not exist where Plaintiff fails "to allege any preemptively proscriptive action taken by Defendants to deprive her of her First Amendment rights." *Sexton v. Faris*, No. 22-CV-1927-WJM-MEH, 2023 WL 5671492, at *7 (D. Colo. Sept. 1, 2023). Here, the duplicative claims do not distinguish between a "preemptively proscriptive action" (action taken *before* her speech), and punishment for her speech (action taken *after* her speech). Instead, Plaintiff's claims 8-10 are actions she alleges occurred as a *result* of the speech outlined in paragraphs 176, 184, and 192 of the Complaint – and that *subsequent* to this speech she was issued a library exclusion, City Council meeting exclusion, and denied the opportunity to speak at a City Council meeting (bases for claims 8-10). Direct denial claims 8-10 are *identical* to retaliation claims 1, 4, and 5. As Plaintiff has not pled any "distinct basis" between her free speech claims (claims 8-10) and her retaliation claims (claims 1, 4, and 5), her free speech claims should be dismissed. *See id.*

**G.     NO FIRST AMENDMENT RETALIATION**

    **1.     Denial of the opportunity to speak at City Council meetings on October 7, 2024, November 12, 2024, November 15, 2024 and January 6, 2025.**

Plaintiff does not address that she was permitted to speak at City Council meetings on October 7, 2024, November 12, 2024, and November 15, 2024, and as such, Defendants presume she concedes these portions of her claim should be dismissed. Regarding the January 6, 2025 meeting, Plaintiff cites to *Cillo,* arguing that only she was required to provide her address; however, the allegations in the Complaint contradict this assertion. *See* Complaint, ¶ 76 ("**each person** is asked to identify themselves and provide their address or, cross streets or, if they're not from Englewood, their city of residence") (emphasis added). Further, the Complaint supports Plaintiff was permitted repeated violations of this rule before any action was finally taken. *See* Complaint, ¶ 80 ("In the **months** leading up to October 7, 2024, Ms. Benson **often** refused to provide geographical information at the beginning of her public comment…") (emphasis added). Plaintiff has not alleged she was treated more harshly than similarly situated individuals given she has not alleged any individual repeatedly refused to provide their address for months and received different treatment. *Contrast with Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 462 (10th Cir. 2013).

    **2.     Exclusions from library and City Council meetings.**

In conclusory fashion, the Response argues that any protected activity Plaintiff engaged three months prior to her exclusion from the library is the reason for her exclusion. However, the Complaint alleges the exclusion notice lists harassment as its basis. [Complaint, ¶ 64]. As discussed further in Section H below, the allegations in

8

Complaint support that Plaintiff harassed Ellegan. To prevail on her claim, Plaintiff must plead facts showing she would not have been excluded from the library "but-for" her protected activity. *Nieves v. Bartlett*, 587 U.S. 391, 391-392 (2019). Because the Complaint indicates she would have been excluded regardless, based on her harassment of Ellegan, Plaintiff has not plausibly alleged causation. Plaintiff's harassment of Ellegan is not protected activity given the Complaint's allegations do not support he was enforcing any City policy. Indeed, the Response contradicts itself on this point by alleging the City's policy was that "patrons would *not* be denied access to the public bathroom" and that Ellegan violated this policy. [Response, p. 6 (emphasis added)]; [*see also* Complaint, ¶ 38 (City Manager assured Plaintiff the public would not be denied restroom access)]. Nor does the Response provide any authority in response to the Motion's proffered case – *Montoya* – describing the limited circumstances under which private security guards qualify as state actors. [Motion, p. 12].

The Response argues a reasonable person would be objectively chilled by a temporary exclusion from City Council meetings, that Defendants' motive was retaliatory, and that Plaintiff received disparate treatment. Plaintiff argues that whether she was subjectively chilled is immaterial, yet this was repeatedly pled in her Complaint. [*See* Complaint, ¶¶ 127, 134, 141, 148, 155, and 204]. A person of ordinary firmness would not be chilled from a 45-day temporary exclusion or feel the need to hire counsel to appeal it. *Douglass v. Garden City Cmty. Coll.*, 652 F. Supp. 3d 1329 (D. Kan. 2023), *appeal dismissed sub nom*. *Douglass v. Swender*, No. 23-3027, 2023 WL 5179124 (10th Cir. Mar. 1, 2023) (alleged actions of community college's trustees in closing public comment session of board meetings for seven-month period after community

9

member reported Title IX concerns to board would not chill person of ordinary firmness from engaging in protected speech). The Complaint's allegation that Defendants acted with a retaliatory motive is conclusory. Instead, the allegations establish that the City Council exclusion resulted from Plaintiff's disruption of and refusal to leave the meeting on October 7, 2025. [Complaint, ¶¶ 84-89 and 90-92]. While Plaintiff argues her exclusion was based on the pretextual and disparate reason of failure to provide an address, this is temporally impossible, given the Complaint alleges "Attorney Niles issued an exclusion notice" on October 7, 2024 [Complaint, ¶¶ and 83 and 94]. Plaintiff was not called to speak for failure to provide her city of residence until three months *after* the exclusion notice was already issued, on January 6, 2025. [Complaint, ¶ 105 ]; [Motion, p. 7].

### 3. Prosecutions re: Ellegan harassment and City Council meeting Conduct.

The Response argues Plaintiffs' prosecutions are not supported by probable cause because she was engaged in protected activity. However, as discussed further below in Section H, the Complaint supports probable cause existed to believe Plaintiff committed crimes violating C.R.S. § 18-9-111 (harassment), C.R.S. § 18-8-102 (obstruction of government function), and C.R.S. § 18-9-110 (refusal to leave public building upon request when disrupting public function). This type of conduct is not protected. *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 471 (2025) (speech integral to criminal conduct is not protected). The Response argues Plaintiff did not have the requisite intent (willful) to support probable cause for a violation of C.R.S. § 18-9-110. [*See* Response, p. 8]. However, Plaintiff concedes she refused to leave the City Council meeting after being requested to do so, which is undoubtedly willful. [Complaint, ¶¶ 90-

10

92].

While the Response argues no others were prosecuted for similar conduct, the Complaint does not allege *any* similarly situated individual who engaged in conduct similar to harassing a private security guard by following him around to different areas for ten minutes and refusing to leave a City Council meeting while obstructing City Council's ability to conduct the meeting. The Response attempts to argue Plaintiff's arrest was for failure to provide her address; however, again, this is temporally impossible given the Complaint alleges her arrest warrant was issued on "October 8, 2024," and Plaintiff was not called for failure to provide her city residence three months *later*, on "January 6, 2025." [Complaint, ¶ 96]; [Complaint, ¶ 105 ]; [Motion, p. 7].

**H.    NO VIOLATION OF COLORADO CONSTITUTIONAL RIGHTS TO FREE SPEECH AND ASSOCIATION**

Plaintiff does not respond to whom she was prevented from associating and therefore Defendants presume she concedes the dismissal of this portion of the claim. Neither the Complaint nor Response support Officer Mulder lacked reasonable suspicion to conduct an investigation into Plaintiff's harassment of Ellegan, or that Detective Glee lacked probable cause to arrest Plaintiff for harassing Ellegan. Plaintiff attempts to advance a semantics argument, contending that she did not  "follow" Ellegan, but rather merely moved throughout the building in all the same areas where he happened to be. This repeated "move[ment]" supports reasonable suspicion and probable cause for the officers to have believed Plaintiff followed Ellegan with the intent to harass, annoy, or alarm him. Nothing in the Complaint supports Plaintiff's movement was unintentional. Instead, the Complaint alleges Ellegan called the Police Department and reported Plaintiff followed him around the Civic Center building, providing further

11

support for reasonable suspicion and probable cause. [Complaint, ¶ 58]. As such, all claims against Officer Mulder should be dismissed. Likewise, neither the Complaint nor Response support Detective Glee lacked reasonable suspicion and probable cause to investigate or author an arrest warrant for Plaintiff for refusing to leave the City Council meeting when requested and for interfering with City Council's ability to conduct the meeting. Though Plaintiff contends Defendants did not address this, it is address in the Motion on pp. 13-15. As a result, all claims against Detective Glee should be dismissed.

I. **INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

For the reasons discussed above and within the Motion, Defendants did not violate Plaintiff's constitutional rights. The cases proffered within the Response are not sufficiently similar to support the law was clearly established as to each Defendant for each violation alleged. "The Supreme Court has repeatedly held a general test cannot overcome qualified immunity." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (admonishing and reversing lower court for relying on the general test outlined in *Garner* to overcome qualified immunity). An example of a sufficiently similar case would be a finding that probable cause does not exist when harassment takes place in a public building. Neither the Complaint nor the Response cites any authority with a comparable level of specificity.

**WHEREFORE**, for the reasons stated herein, as well as in their Motion to Dismiss, Defendants respectfully request this Court grant their Motion to Dismiss.

Respectfully submitted,

s/ *Courtney B. Kramer*
**Courtney B. Kramer**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
Email: ckramer@sgrllc.com

s/ *Tiffany E. Toomey*
**Tiffany E. Toomey**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
Email: ttoomey@sgrllc.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of October 2025, I electronically filed a true and correct copy of the above and foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification to the following email addresses:

Jamie H. Hubbard
Carey L. Bell, IV
STIMSON LABRANCHE HUBBARD, LLC
Email: bell@slhlegal.com
Email: hubbard@slhlegal.com
*Attorneys for Plaintiff Regan Benson*

 /s/ *Tiffany E. Toomey*
Attorney