# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1-25-CV-1571-RMR-KAS

REGAN BENSON,

    Plaintiff,

v.

ENGLEWOOD, COLORADO, a Colorado municipal corporation,
TAMARA NILES, in her individual and official capacity,
OTHONIEL SIERRA, in his individual and official capacity,
JOE ANDERSON, in his individual and official capacity,
SERGIO RENTERIA, in his individual and official capacity,
BETHANY LAFFERTY, in her individual and official capacity,
CORINNE BARNETT, in her individual and official capacity,
JEAN MULDER, in her individual and official capacity,
AARON GLEE, in his individual and official capacity, and
SHAWN LEWIS, in his individual and official capacity.

    Defendants.

---

**DEFENDANTS NILES AND LEWIS' RESPONSE TO PLAINTIFF'S SPECIAL MOTION TO DISMISS AMENDED COUNTERCLAIM, ECF NO. 69**

---

The individual Defendants-counterclaimants, **TAMARA NILES** and **SHAWN LEWIS** ("Defendants"), by and through their attorneys, **SGR, LLC**, hereby submit their Response to Plaintiff's Special Motion to Dismiss Amended Counterclaim, ECF No. 69, as follows:

    **I.**    **INTRODUCTION**

Plaintiff's Special Motion should be denied because it is procedurally premature and substantively meritless. Procedurally, the Special Motion relies on materials outside

the pleadings, effectively converting it to a Motion for Summary Judgment on which the parties have not engaged in the prerequisites required by Judge Rodrigruez's Standing Order Regarding Rule 56 Motions, rendering it unripe for review.

Substantively, the Special Motion fails to demonstrate the absence of a genuine dispute of material fact concerning the meaning and context of Plaintiff's defamatory statements. Plaintiff published multiple YouTube videos on her online channel confirming her statements were intended and understood as factual assertions of sexual misconduct rather than rhetorical statements or hyperbole. As discussed below, Plaintiff's statements are demonstrably false, which she does not dispute.

## II.   LEGAL STANDARD

Colorado's anti-SLAPP statute is aimed at protecting individuals from lawsuits intended to silence or intimidate them for exercising free speech rights. *See* COLO. REV. STAT. § 13-20-1101(3)(a) (anti-SLAPP statute). In applying the anti-SLAPP statute, Courts must determine first whether the basis of anti-SLAPP motion is legal or factual. *Moreau v. United States Olympic & Paralympic Comm.,* 641 F. Supp. 3d 1122, 1133 (D. Colo. 2022). If the anti-SLAPP motion mounts a legal challenge, Courts assess the motion under F.R.C.P. 12(b)(6), governing motions to dismiss for failure to state a claim. *Id*. If the anti-SLAPP motion mounts a factual challenge, courts assess the motion under F.R.C.P. 56, governing summary judgment. First, the Court determines whether any claims challenged pursuant to F.R.C.P. 12(b)(6) based on legal argument are subject to dismissal. *Id.* Granting an anti-SLAPP special motion without granting leave to amend would directly collide with F.R.C.P. 15(a)'s policy favoring liberal amendments. *Id.* After

allowing "amendments to the counterclaims, and after discovery has been conducted, the Court would then address factual challenges to the subject claims [pursuant to F.R.C.P. 56]." *Id.* The Court then applies a two-step framework for determining dismissal pursuant to F.R.C.P. 56(a). *Id.* at 1123-1139. Here, the parties concede Step One applies; therefore, Defendants omit legal standards related to Step One from this briefing. Regarding Step Two, the Court must determine whether Defendants have a "reasonable likelihood" of prevailing on their counterclaim. *Id.* Defendants' burden under Step Two is "minimal" and the "probability of prevailing need not be high." (citations and quotations omitted). *Id.*

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The evidence must be viewed "in the light most favorable to [Defendants] as the nonmoving party." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). As the Tenth Circuit has cautioned, summary judgment is "[n]ot a replacement for the trial as the preferred means for resolving disputes." *Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016).

### III. RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS ("RSF")

Plaintiff's Special Motion does not follow the format required by D.C.COLO.LCivR 56.1 that "[a] motion under Fed. R. Civ. P. 56 for summary judgment or partial summary judgment shall include a statement of undisputed facts." Defendants will nevertheless attempt to respond to the facts asserted in the Special Motion even though they are not numbered by paragraph and the Special Motion does not indicate whether they are in dispute. This section includes only facts that Defendants dispute.

1. Defendants dispute the allegations in the first two sentences of Plaintiff's Factual Background section - that Plaintiff's nonprofit provides outreach and advocates for the homeless community. [*See* Respondent's Appx., p. 2 - **Exhibit A,** YouTube comment re: Plaintiff using charity for personal expenses, p. 1 ("she [Plaintiff] could really get into trouble using non-profit funds for legal expenses for an outside case. Time to let the Colorado Treasury know!")]. It appears that Plaintiff uses charitable funds for personal expenses which invalidates nonprofit status. *See* I.R.C. § 501(c)(3) (no tax-exempt status where "part of the net earnings of which inures to the benefit of any private shareholder or individual").

2. Defendants dispute that Plaintiff regularly communicates about issues related to homelessness advocacy. The vast majority of Plaintiff's communication consists of abusive yelling and name-calling and does not address homelessness advocacy. [*See generally* Plaintiff's YouTube channel, https://www.youtube.com/c/ReganBenson].

3. Defendants dispute that Plaintiff's statements often push elected officials to "do more or do better for their citizens." [*See* Respondent's Appx., p. 2 - **Exhibit B**, article discussing Plaintiff, p. 5 (Plaintiff stating, "nothing she did would have an impact on anything.")].

4. Defendants dispute the allegations on page 8 of the Special Motion that the plain meaning of the phrase "playing fricking cornholie" used in the context of Plaintiff's statements refers to a beanbag game. *See* ECF No. 69-2 Ex. 2, p. 1 ("playing fricking

4

corn holie [sic] with each other"); [Respondent's Appx., p. 2 - **Exhibit C**[1], May 19, 2025 YouTube video re: cornholing statement]; [Respondent's Appx., p. 2 - **Exhibit D**[2], July 25, 2025 YouTube video re: Plaintiff stating cornholing could be construed as a sexual idiom]; [Respondent's Appx., p. 2 - **Exhibit E**[3], August 4, 2025 YouTube video re: Plaintiff stating that "the shoe fits" regarding Lewis and Niles engaging in sexual misconduct with each other]; [Respondent's Appx., p. 2 - **Exhibit F**, Affidavit of Tamara Niles, ¶ 5]; [Respondent's Appx., p. 2 - **Exhibit G**, Affidavit of Shawn Lewis, ¶ 4].

5.   Defendants dispute the allegations on pages 9-13 of the Special Motion, that a reasonable listener would have understood Plaintiff's statements as figurative or hyperbole. *See* citations to YouTube videos referenced in paragraph 4, above.

6.   Defendants dispute the allegations on page 12 of the Special Motion that they were not attentive during Plaintiff's public comment on May 19, 2025; especially given Plaintiff's statement that Niles looked like she was about to cry based on hearing Plaintiff's comments. [Respondent's Appx., p. 2 - **Exhibit H**[4], May 19, 2025 YouTube video ("Did you see Tamara's [Defendant Niles] face when I said Jamie [Plaintiff's counsel] is

---

[1] **Exhibit C**: This YouTube video is a screen recording of the video located on Plaintiff's YouTube channel at https://www.youtube.com/watch?v=PAvJ4Y1YJHE, from timestamps 47:13-47:35. **Exhibits C, D, E**, and **H** are videos saved to a thumb drive and conventionally filed with the Court on this date.

[2] **Exhibit D**: This YouTube video is a screen recording of the video located on Plaintiff's YouTube channel at https://www.youtube.com/watch?v=RzNlL32oRfk, from timestamps 10:53-11:08.

[3] **Exhibit E**: This YouTube video is a screen recording of the video located on Plaintiff's YouTube channel at https://www.youtube.com/watch?v=XDcVUOLvhAo, from timestamps 24:53-25:23.

[4] **Exhibit H**: This YouTube video is a screen recording of the video located on Plaintiff's YouTube channel at https://www.youtube.com/watch?v=PAvJ4Y1YJHE, from timestamps 53:07-53:29.

going to make you cry. And she almost started crying." She then laughs. "Oh shit that needed to happen.")]; [Respondent's Appx., p. 2 - **Exhibit F**, ¶ 4]; [Respondent's Appx., p. 2 - **Exhibit G**, ¶ 3].

## IV.   STATEMENT OF ADDITIONAL FACTS ("SAF")

7.    On May 19, 2025, July 25, 2025, and August 4, 2025, Plaintiff published false, defamatory statements that Lewis and Niles were engaging in sexual misconduct with each other. *See* citations to YouTube videos referenced in paragraph 4, above; [Respondent's Appx., p. 2 - **Exhibit F**, ¶¶ 5 and 7]; [Respondent's Appx., p. 2 - **Exhibit G**, ¶¶ 4 and 7].

8.    Specifically, on May 19, 2025, Plaintiff published a YouTube video online stating that Lewis and Niles are "playing fricking cornholie" with each other. *See* ECF No. 69-2 Ex. 2, p. 1. Plaintiff pointed to Lewis and Niles when she made this statement and referred to them by name. [Respondent's Appx., p. 2 - **Exhibit C** (May 19, 2025 YouTube video)].

9.    The ***first*** result in a Google search defines the term cornholing as to "have anal <u>intercourse</u> with (someone)." (emphasis in original), as shown in the following screen shot:

6



10. Niles is married, and as such, Plaintiff's statements include false accusations that Lewis and Niles engaged in sexual misconduct by having an extramarital affair. *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) ("Accordingly, we conclude that a statement that any person is engaging in an extramarital affair is an allegation of serious sexual misconduct for this purpose, and, therefore, the publication here alleging that Gordon engaged in an extramarital affair also is defamatory *per se*."). [Respondent's Appx., p. 2 - **Exhibit F**, ¶¶ 2 and 5]; [Respondent's Appx., p. 2 - **Exhibit G**, ¶¶ 4 and 5].

11. Plaintiff expressly reaffirmed this meaning on two subsequent occasions.

12. On July 25, 2025, Plaintiff published a YouTube video online addressing Defendants' counterclaims, stating, "… someone having sexual relations with each other – so what. I guess that some idioms could be taken as. Like you know, you're taking it up the -- ." [Respondent's Appx., p. 2 - **Exhibit D** (July 25, 2025 YouTube video)].

13. On August 4, 2025, Plaintiff published a YouTube video online again

7

addressing Defendants' counterclaims, stating, "their using taxpayer dollars to file a countersuit in Federal Court to sue me, because, apparently, they think I said that they are participating in sexual encounters with each other… if the shoe fits wear it." [Respondent's Appx., p. 2 - **Exhibit E** (August 4, 2025 YouTube video)].

14. As shown in the referenced YouTube videos, each of these three videos have received between 953 and 2,737 views to date. [Respondent's Appx., p. 2 - **Exhibit I**, pp. 1-3 (screenshots of YouTube view counts)].

15. Plaintiff's combined statements on May 19, 2025, July 25, 2025, and August 4, 2025, indicate she was neither joking nor speaking figuratively given her published statement that the "shoe fits." *See* citations to YouTube videos referenced in paragraph 4, above.

16. Given Plaintiff's published statement to the public that "the shoe fits" with regard to sexual misconduct, the evidence does not support that she referenced a game of beanbags. Nor would this make sense, given Plaintiff made this statement during a City Council meeting while Lewis and Niles were not playing a game of beanbags. *See* citations to YouTube videos referenced in paragraph 4, above.

17. Plaintiff's defamatory statements caused Lewis and Niles injury to their reputations, embarrassment, fear, anxiety, humiliation, and mental anguish. [Respondent's Appx., p. 2 - **Exhibit F**, ¶ 7]; [Respondent's Appx., p. 2 - **Exhibit G**, ¶ 7].

18. Plaintiff acknowledged and took joy from Defendants' emotional distress in her May 19, 2025 YouTube video by stating, "And she [Niles] almost started crying." She then laughed, "Oh shit that needed to happen." *See* citation to same statement in

8

paragraph 6, above.

## V. ARGUMENT

Defendants stipulate Step One of the anti-SLAPP analysis is satisfied. This analysis therefore focuses on Step Two.

### A. Motion is not yet ripe pursuant to Practice Standards.

Plaintiff's Special Motion relies on facts and exhibits outside of Defendants' Amended Counterclaim. *See* Special Motion and Exhibits, ECF Nos. 69 and 69-1-69-4. Though it is not indicated in the Special Motion, Defendants therefore presume Plaintiff's Special Motion is pursuant to F.R.C.P. 56. *See* Civ. Practice Standard 7.1B(c) ("Rule 12(b) motions which rely on matters outside the pleadings shall address the basis for the Court to consider such documents and whether the motion should or should not be converted into a motion for summary judgment.").

Judge Rodriguez's Standard Order Regarding Rule 56 Motions includes robust conferral and procedural requirements before either party can file a motion for summary judgment to avoid "impos[ing] unnecessary costs on the parties." *See* Standing Order, p. 1. The parties must "identify (a) what facts are material and (b) whether those facts are in dispute." *Id*. The parties shall then submit a chart of these facts citing supported evidence and the Court will set a briefing schedule and conference. *Id.*, p. 3. "No party shall file an early motion for summary judgment without first obtaining leave of the Judge or Magistrate Judge." *Id.*, p. 4. The parties have not engaged in any conferral or any of the procedural steps required by Standing Order.

Defendants have not found guidance on whether anti-SLAPP special motions to

9

dismiss pursuant to F.R.C.P. 56 should follow procedures for Rule 12 or for Rule 56 motions, or a combination of two. However, the purpose of Judge Rodriguez's Standing Order would be frustrated absent conferral or a conference on the disputed facts prior to the filing of a Rule 56 motion for summary judgment. To the extent Plaintiff intends to follow these procedures after the close of discovery, this Motion is not yet ripe for review.

      **B.**     **Reasonable likelihood of prevailing on defamation elements.**

Where a statement concerns public figures such as City Attorney Niles and City Manager Lewis, they must establish (1) a defamatory statement, (2) that was materially false, (3) concerning Niles and Lewis, (4) published to a third party, (5) with actual malice, and (6) that caused actual or special damages. *Rosenblum v. Budd*, 538 P.3d 354, 365, ¶¶ 38-40 (Colo. App. 2023).

      *1.*     ***Elements 2-6 (Plaintiff appears to concede these are satisfied).***

Plaintiff appears to concede elements (2)-(6) are satisfied, given the Special Motion contains no argument as to these elements. Nor can any argument addressing the same be raised for the first time in a Reply by Plaintiff. *Motlagh v. Salt Lake City*, No. 2:22-CV-00635, 2023 WL 9065219, at *4 (D. Utah July 5, 2023) ("Here, Plaintiff improperly attempts to assert new facts through her responsive memorandum").  These elements are indeed satisfied. Plaintiff posted three YouTube videos that she published online on her YouTube channel. [**SAF**, ¶¶ 7-13]. Each of these videos were viewed by many members of the public. [**SAF**, ¶ 14]. In these videos, Plaintiff states Lewis and Niles engaged in sexual misconduct with each other. [**SAF**, ¶¶ 7-13]. There is no evidence or argument within the Special Motion indicating Plaintiff believed these statements were

10

true and indeed they are false. [**SAF**, ¶¶ 7 and 10]. Plaintiff's statements concern Lewis and Niles given she referred to them by name and pointed at them when she made the cornholing statement. [**SAF**, ¶ 8]. Plaintiff made this statement with actual malice given there is no evidence or information supporting its truth. Plaintiff acted with actual malice given she intended to harm Lewis and Niles with her false statement. [**SAF**, ¶ 18]. Lastly, Plaintiff does not dispute that Lewis and Niles suffered the damages indicated in the Amended Counterclaim - injury to reputation, embarrassment, humiliation, and mental anguish. [**SAF**, ¶ 17]. *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994) (evidence supported actual damages in defamation claim where public figure testified he was "devastated" by defamatory statements in a news article).

### 2. Element 1 - defamatory statement.

The Special Motion appears to only argue that the first element is not met. Plaintiff argues her statements were not defamatory because (1) the plain meaning of the term "cornholie" describes a game of beanbags, and (2) a reasonable listener would believe Plaintiff's statement was figurative or hyperbole.

Neither of these arguments have merit in light of Plaintiff's published statements that the term could be taken as a sexual idiom and that the "shoe fits" with regard to sexual misconduct. [**RSF**, ¶ 4 ]; [**SAF**, ¶¶ 7-13]. Plaintiff's Special Motion should be denied on these bases alone. Plaintiff argues that her subjective views of the term are irrelevant. However, Plaintiff published these statements online and thus they are not merely her private, subjective views on the term. These are published statements that expressly indicate to the public that Lewis and Niles were engaged in sexual misconduct with each

11

other - that "the shoe fits." [**RSF**, ¶ 4 ]; [**SAF**, ¶¶ 7-13].

The plain meaning of Plaintiff's statements do not support a definition consisting of a beanbag game. With respect to the term "cornholie," Plaintiff altered the word cornholing, indicating a slang variation referencing a sexual act. The plain meaning of "cornholing" based on a Google definition search is "a vulgar slang term for anal intercourse." *Fry v. Lee*, 408 P.3d 843, 850, ¶ 30 (Colo. App. 2013) (Colorado courts commonly and properly rely on lay dictionary definitions). Plaintiff incorrectly argues the slang term is only apparent when used as a verb. Wikipedia indicates the term also exists as a noun defined as "sexual slang vulgarism for the anus[5]." Regardless, such a trivial distinction does not preclude the term from amounting to defamation. *Coomer v. Donald J. Trump for President, Inc.,* 552 P.3d 562, 582, ¶ 90 (Colo. App. 2024) ("[I]t is not the literal truth or falsity of each word or detail used in a statement which determines whether or not it is defamatory," but "whether the 'gist or sting' of the statement is true or false, benign or defamatory, in substance.") (citations omitted).

With respect to the term "idiom" for "sexual relations" in Plaintiff's July 25, 2025 published statement, the plain meaning of "idiom" based on a Google definition search is "a group of words established by usage as having a meaning not deducible from those of the individual words." By using the term "idiom," Plaintiff informed the public that the phrase "playing fricking cornholie" had a meaning other than a game of beanbags.

With respect to the phrase, "if the shoe fits wear it," in Plaintiff's August 4, 2025 published statement, the plain meaning based on a Google definition search is "used as

---

[5] https://en.wikipedia.org/wiki/Cornhole_(slang)

a way of suggesting that someone should accept a generalized remark or criticism as applying to themselves." Regardless of how Plaintiff may have couched her initial remark, on August 4, 2025, Plaintiff certainly accused Lewis and Niles of engaging in sexual misconduct.

Plaintiff lastly argues that even if her statement could be construed as sexual misconduct, a reasonable listener would interpret it as hyperbole or figurative because she was venting. While it is clear that Plaintiff was angry, she plainly asserted in two subsequent YouTube videos that the phrase could be taken as an idiom for sexual relations and that "the shoe fits." In doing so, she signaled her words were designed to be taken as true. *Creekside Endodontics, LLC v. Sullivan*, No. 2020CV30024, 2021 WL 9958455, at *10 (Colo.Dist.Ct. Mar. 18, 2021) ("While it is clear she was angry and frustrated, she also included several x-ray photographs in an effort to substantiate her factual assertions and indicated other professionals in the dental field shared her sentiment regarding the quality of Creekside's and Dr. Stubbs' services… Her efforts to substantiate the claims she made in the three online statements act as a signal that her words were designed to be taken as true.").

The parties have significant disputes of material fact over the context and meaning of Plaintiff's statements. These inquiries are best suited for the trier of fact and as such Plaintiff's Special Motion should be denied. *Keohane*, 882 P.2d at 1304, Footnote 15 ("the inquiry of how the statement was said, including the inflection of the speaker's voice, is a matter of fact best left to the trial judge to determine.").

## VI.     MOTION FOR FEES SHOULD BE DENIED

Footnote 3 of the Special Motion indicates that Plaintiff intends to seek attorney's fees for drafting her initial special motion to dismiss the counterclaims that Defendants omitted from their Amended Counterclaims (ECF No. 59), but included in their initial Counterclaims (ECF No. 24). Plaintiff represents "courts have routinely" ordered fees under those circumstances; however, this is incorrect as to federal court. Indeed, the cases proffered by Plaintiff are state court cases from California and New Jersey. F.R.C.P. 15 preempts Plaintiff's argument in federal court. Failing to grant a "plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *see id.* ("the *Vess* court conducted its analysis of the defendants' anti-SLAPP motions with respect to Vess's **first amended** complaint as opposed to Vess's **original complaint**…. a direct collision with a federal procedural rule exists… the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint. If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants.") (emphasis added)"; *Advincula v. City of Hesperia*, No. E044675, 2008 WL 5404225, at *7 (Cal. Ct. App. Dec. 30, 2008) ("Indeed, when the defendant argued that the court's holding would encourage forum shopping, the court responded essentially that it had no choice, because "a direct collision with a federal procedural rule exists." (Ibid.) ***Accordingly, it all but acknowledged that a different result would obtain in state court.***") (emphasis added). As such, briefing on this issue is unnecessary and the Court should deny

14

Plaintiff's requests for attorney's fees.

**WHEREFORE**, Defendants Niles and Lewis respectfully request this Court deny Plaintiff's Special Motion to Dismiss, ECF No. 69.

Respectfully submitted,

s/ *Eric M. Ziporin*
**Eric M. Ziporin**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
Email: eziporin@sgrllc.com

s/ *Tiffany E. Toomey*
**Tiffany E. Toomey**
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
Email: ttoomey@sgrllc.com
*Counsel for Defendants-counterclaimants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28th day of October, 2025, I electronically filed a true and correct copy of the above and foregoing **DEFENDANTS NILES AND LEWIS' RESPONSE TO PLAINTIFF'S SPECIAL MOTION TO DISMISS AMENDED COUNTERCLAIM, ECF NO. 69** with the Clerk of Court using the CM/ECF system which will send notification to the following email addresses:

Jamie H. Hubbard
Carey L. Bell, IV
STIMSON LABRANCHE HUBBARD, LLC
Email: bell@slhlegal.com
Email: hubbard@slhlegal.com
*Counsel for Plaintiff Regan Benson*

                                                         */s/ Mariel Juniper*
                                                         Legal Secretary