# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-CV-1571-RMR-KAS

REGAN BENSON,

    Plaintiff/Counterclaim Defendant,

v.

ENGLEWOOD, COLORADO, a Colorado municipal corporation

and

OTHONIEL SIERRA, in his individual and official capacity,
JOE ANDERSON, in his individual and official capacity,
SERGIO RENTERIA, in his individual and official capacity,
BETHANY LAFFERTY, in her individual and official capacity
CORINNE BARNETT, in her individual and official capacity,
JEAN MULDER, in her individual and official capacity,
AARON GLEE, in his individual and official capacity,
CARRIE WATSON, in her individual and official capacity, and

    Defendants

and

TAMARA NILES, in her individual and official capacity, and
SHAWN LEWIS, in his individual and official capacity.

    Defendants/ Counterclaim Plaintiffs.

## Regan Benson's Response to Defendants' Motion to Stay Discovery

Plaintiff Regan Benson ("Ms. Benson"), through counsel, submits this Response to Defendant's Motion to Stay Discovery (Doc. 67).[1] The Motion should be denied because Defendants'

---

[1] Plaintiff's counsel inadvertently failed to file this Response yesterday evening at the deadline. Plaintiff respectfully requests that the Court consider this Response despite it being filed the morning after the deadline.

motion to dismiss is unlikely to succeed, discovery will proceed against all Defendants regardless of qualified immunity because the claims against Englewood arise from the same basic facts as the claims against the individual Defendants, and the Defendants have not established good cause.

### I.      Controlling Law

Whether to stay discovery during a proceeding is left to the trial court's discretion. *McGinn v. El Paso Cty.*, 640 F. Supp. 3d 1070, 1074 (D. Colo. 2022). In this judicial district, discovery stays are the exception rather than the rule. *Id.* (citing *Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009) ("This District generally disfavors stays of discovery.")). The Tenth Circuit has similarly held that "the right to proceed in court should not be denied except under the most extreme circumstances." *JTS Choice Enters. v. E.I. Dupont De Nemours & Co.*, No. 11-cv-03143-WJM-KMT, 2012 WL 13211845, at *1 (D. Colo. Feb. 29, 2012) (quoting *Commodity Futures Trading Case Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)). "Even in cases where defendants raise a qualified immunity defense, courts within the District of Colorado generally disfavor a stay of all discovery." *McGinn*, 640 F. Supp. 3d at 1074.

When considering a stay of discovery, courts in this district generally consider the following factors: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendants in going forward; (3) the convenience to the Court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). A stay is only permitted on a showing of good cause. *McGinn*, 640 F. Supp. 3d at 1074 (citing Fed. R. Civ. P. 26(c)). To be entitled to a stay, the moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Defendants

cannot sustain their burden "merely by relying upon speculation or conclusory statements." *Breckenridge v. Vargo & Janson, P.C.*, No.16-cv-01176-WJM-MEH, 2016 WL 7015702, at *2 (D. Colo. Nov. 28, 2016). Rather, they must support their request for a stay with a "particular and specific demonstration of fact." *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, No. 10-cv-02593-WJM-KLM, 2012 WL 14255, at *1 (D. Colo. Jan. 4, 2012) (citation omitted).

Stays are further disfavored when the defendants' motion to dismiss is unlikely to succeed. Courts inside and outside this jurisdiction have employed a "preliminary peek" approach, which allows judges to consider the likelihood of success of the motion to dismiss along with the other balancing factors. *E.g.*, *Tanner v. Campbell et al.*, No. 21-cv-02340-NRN, at 6-8 (D. Colo. Mar. 7, 2022) (ECF No. 50); *Waisanen v. Terracon Consultants, Inc.*, No. 09-cv-01104-MSK-KMT, 2009 WL 5184699, at *1 (D. Colo. Dec. 22, 2009) (considering merits without using term "preliminary peek"); *Sanaah v. Howell*, No. 08-cv-02117-REB-KLM, 2009 WL 980383, at *2 (D. Colo. Apr. 9, 2009) (same); *Est. of Ronquillo v. City & Cty. of Denver*, No. 16-CV-01664-CMA-NYW, 2016 WL 10842586, at *3-4 (D. Colo. Nov. 14, 2016) (same); *Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:14-cv-1455, 2015 WL5732129, at *2 (W.D. Pa. Sept. 30, 2015) (in assessing motion to stay discovery, taking preliminary peek at defendant's summary judgment motion, finding it not to be clearly meritorious, and allowing discovery); *MAOMSO Recovery II, LLC v. USAA Cas. Ins. Co.*, No. 17-21289-Civ-Williams/Torres, 2017 WL 6411099, at *5-6 (S.D. Fla. Dec. 14,2017) (taking preliminary peek at dismissal motion on issue of standing and finding the defendant's arguments "unconvincing to warrant a wholesale stay of discovery"); *see also* Kevin J. Lynch, When Staying Discovery Stays Justice: Analyzing Motions to Stay Discovery When a Motion to Dismiss is Pending, 47 Wake Forest L. Rev. 71, 86-89 (2012). This approach holds the Defendants to their "burden of showing good cause and reasonableness." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997); *see also Sams v. Ga W.*

3

*Gate, LLC*, No. CV415-282, 2016 WL 3339764, at *6 (S.D. Ga. June 10, 2016) ("Generally, a stay should be granted only where the motion to dismiss appears, upon preliminary review, 'to be clearly meritorious and truly case dispositive,' rendering discovery a mere futile exercise.") (quoting *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)).

## II. Defendants Are Unlikely to Prevail on their Motion to Dismiss

Motions to dismiss under Rule 12(b)(6) are disfavored, and defendants seeking dismissal on qualified immunity grounds under Rule 12(b)(6) face a much higher bar than they do at summary judgment. *Shell v. Am. Fam. Rights Ass'n,* 899 F. Supp. 2d 1035, 1055 (D. Colo. 2012); *Sayed v. Virginia*, 744 F. App'x 542, 545-46 (10th Cir. 2018). It has long been clearly established that the government cannot stifle speech or punish someone because the government doesn't like what the person has to say. But that's exactly what Englewood and its employees did when they excluded Ms. Benson from the library, excluded her from City Council meetings, filed multiple criminal charges against her solely on the basis of her First Amendment-protected activity, and even passed a law specifically targeting Ms. Benson's speech. *See* First Am. Compl., Doc. 36. The Defendants may argue that they took these actions for other, constitutionally permissible reasons, but that is a factual dispute that cannot be resolved at this stage. Because a preliminary peek shows that Defendants will not meet the high threshold for prevailing on a Rule 12(b)(6) motion, Defendants have not established good cause for a stay.

## III. Defendants' Motion to Dismiss Illustrates the Need for Discovery in this Case

Defendants' own motion to dismiss illustrates the need for prompt discovery in this case. Rather than rely solely on the pleadings in the First Amended Complaint as required, Defendants' motion to dismiss repeatedly resorts to reliance on facts outside the Complaint and documents and videos not referenced in the Complaint. *See, e.g.*, Doc. 50 at 1-2 (alleging Ms. Benson

4

engaged in "harassment, in-person bullying, cyberbullying, intimidation, and public humiliation – to provoke reactions for sensationalized YouTube content"); 10 (raising an entire page worth of factual disputes about when City Council meetings occurred and what happened at those meetings); 11 (raising allegations about Ms. Benson's actions at City Council meetings that were not referenced in the Complaint; in fact, the meetings relied on by Defendants post-date the original complaint) (relying on videos from those meetings); 12 (alleging Ms. Benson was "permitted" to use the restroom) (alleging Ms. Benson "harassed," physically obstructed, and chased the security guard); 13 (alleging Ms. Benson spoke without permission) (relying on the City's Standards of Behavior which are not referenced in or central to the Complaint) (alleging Ms. Benson "repeatedly refused to comply with the Municipal Code, the City Council policies, and the Standards of Behavior"); 14 (alleging Ms. Benson followed the security guard and only stopped when "he was able to escape"); 15 (referencing Ms. Benson's "harassment" of the security guard).

## IV. Defendants' Cursory Assertion of Qualified Immunity Does Not Warrant a Stay

Defendants request a blanket stay on discovery based on their cursory assertion of qualified immunity in their Rule 12(b)(6) motion. Doc. 50, at 15. In *McGinn v. El Paso Cty.*, 640 F. Supp. 3d 1070 (D. Colo. 2022), this court denied a motion to stay discovery where a civil rights plaintiff brought claims against both individual defendants and the county. *McGinn's* reasoning applies with equal force here and requires the same result. Here, like in *McGinn*, a "successful qualified immunity defense would not be dispositive of all claims in the proceeding." *Id.* at 1075. As Defendants concede, the City of Englewood cannot invoke qualified immunity. Doc. 67, at 5; *id.* at 1075. The claims subject to the qualified immunity defense (those against the individual defendants) and the claims not subject to the qualified immunity defense (those against Englewood) "all arise out of a common core of operative

facts." *McGinn*, 640 F. Supp. 3d at 1075. "In other words, even if the Court issued a blanket stay and the individual § 1983 claims were eventually dismissed by the Court on qualified immunity grounds, substantially similar discovery still may have to take place." *Id.* (citing *Kaufman v. University of Colorado*, 15–cv–00406–LTB–NYW, 2015 WL 4748987 (D. Colo. Aug. 12, 2015) (rejecting a partial stay of discovery because the § 1983 claims brought shared a "common core of facts" with other claims and finding the defendants had failed to make the "requisite showing that this court should depart from the District's general disfavor of a stay of all discovery"); *Estate of Melvin by and Through Melvin v. City of Colorado Springs, Colorado*, 20–cv–00991–CMA–MDB, 2022 WL 3975033, at *2 (D. Colo. Sept. 1, 2022) ("[T]he Officer Defendants' invocation of qualified immunity, in and of itself, does not warrant a [blanket] stay of discovery.")).

A partial stay would be similarly ineffective. "Even if the Court issued a partial stay only in connection with the § 1983 claims against the Individual County Defendants, the common core of operative facts between those claims and the claims on which discovery would continue would still necessitate the involvement of the Individual County Defendants in discovery—undercutting part of the rationale for a stay in the first place." *Id.* (citing *Love v. Grashorn,* No. 21-cv-02502-RM-NRN, 2022 WL 1642496, at *5 (D. Colo. May 24, 2022) ("It makes no sense to have the Individual Defendants be deposed as witnesses now, only to be re-deposed as parties later in the event their qualified immunity defenses are unsuccessful.")).

In this case, there is even more reason to deny the motion to stay. The ten claims against Englewood are not the only claims not subject to a claim of qualified immunity. Defendants Mulder and Glee cannot raise qualified immunity as to Claim 7. Claim 7 arises under Colorado's Enhance Law Enforcement Integrity Act, which expressly prohibits police officers from avoiding liability for constitutional violations on the basis of qualified immunity. Claim 7, like the claims against

6

Englewood, arises out of the same common core of operative facts as many of the other claims against the individual defendants. All of the claims are based on the repeated efforts of Englewood and its employees to stifle Ms. Benson's speech through exclusion and retaliation. Because even a successful invocation the qualified immunity defense would not prevent the discovery that Ms. Benson seeks, the motion to stay should be denied.

> **V.  The Individual Defendants Have Failed to Meet Their Burden Under the *String Cheese* Test**
>
> A.  *Ms. Benson's Interest in the Expeditious Handling of this Matter*

As courts in this district have noted, a civil rights plaintiff has "an undeniably strong interest in proceeding expeditiously with their case." *E.g.*, *McGinn*, 640 F. Supp. 3d at 1076; *Estate of McClain v. City of Aurora et al.*, No. 20-cv-02389-DDD-NRN, 2021 WL 307505, at *3 (D. Colo. Jan. 29, 2021) (quoting *Sanchez v. Hartley*, No. 13-cv-01945-WJM-CBS, 2016 WL 7176718, at *7 (D. Colo. Apr. 26, 2016)) ("Like the government official who rightfully invokes the defense of qualified immunity, a private citizen is entitled to claim the timely protection of the law.").

This is especially true in a First Amendment case. In a First Amendment case, "plaintiffs have a special interest in obtaining prompt adjudication of their rights." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563 (2011); *see also Houston v. Hill*, 482 U.S. 451, 467–468, and n. 17 (1987) (recognizing importance of prompt adjudication of First Amendment claims); *Zwickler v. Koota*, 389 U.S. 241, 252 (1967) (same). Englewood stifled and punished Ms. Benson because Englewood didn't like what Ms. Benson had to say. While the "wheels of justice turn slowly" even in the absence of a stay, the issuance of a stay will "cause those wheels to simply grind to a halt, delaying for months . . . the process of answering [these] important questions." *McClain*, 2021 WL 307505, at *3.

7

Further, the passage of time does not have a neutral effect on all parties. Delay aids Defendants and harms Plaintiff, who bears the burden of proof and thus must rely on documents, witnesses, and other evidence, the availability and quality of which degrades with each passing day. Despite the gravity of Ms. Benson's constitutional injuries, she has only one opportunity to seek justice. The longer Ms. Benson must wait to obtain discovery, the more likely its value will be diluted because "the memories of the parties and other witnesses may fade with the passage of time, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Estate of Bailey v. City of Colo. Springs*, No. 20-cv-1600-WJM-KMT, 2020 WL 6743789, at *2 (D. Colo. Nov. 17, 2020); *Lester v. Gene Express, Inc.*, No. 09-cv-02648-REB-KLM, 2010 WL 743555, at *1 (D. Colo. Mar. 2, 2010); *Marks v. Lynch*, No. 16-cv-02106-WYD-MEH, 2017 WL 491190, at *2 (D. Colo. Feb. 6, 2017) (denying stay, in part, because "staying the entire case while Defendant's motion to dismiss is pending could substantially delay the ultimate resolution of the matter, with adverse consequences such as a decrease in evidentiary quality and witness availability."). This is particularly true in this case, where witness testimony will be critical and depositions and interrogatories will focus on communications amongst the defendants about retaliating against Ms. Benson. Individuals' recollections of these communications are likely to fade with the passing of time. Ms. Benson promptly filed her Complaint to avoid this result. She should not be thwarted by Defendants' legal wranglings.

Moreover, due to the nature of the federal judicial system, there are often lengthy delays in full resolution of such motions. *See Sutton v. Everest National Ins. Co.*, No. 07-cv-00425-WYD-BNB, 2007 WL 1395309, at *2 (D. Colo., May 9, 2007) ("The average time from the filing of a dispositive motion to its determination in this district in 2006 was 7.5 months."); *Smith*

8

*v. Time Ins. Co.*, No. 08-cv-00419, 2008 WL 1766573, at *1 (D. Colo. Apr. 14, 2008) ("The average time from the filing of a dispositive motion to its determination in this district in 2007 was 6.7 months.").

Justice delayed is justice denied. Ms. Benson should not be required to wait to pursue these claims.

B. *Plaintiff's Interest Is Not Outweighed by any Unique Burden on the Defendants*

The Defendants' cursory allegations of burdensome discovery are insufficient to warrant a stay. "The ordinary burdens associated with litigating a case do not constitute undue burden." *Stinnett v. Reg'l Transp. Dist.*, No. 20-cv-01052-RM-NRN, 2020 WL 9258440, at *3 (quoting *Collins v. Ace Mortg. Funding, LLC*, No. 08-cv-01709-REB-KLM, 2008 WL 4457850, at *1 (D. Colo. Oct. 1, 2008)). "[W]here a movant seeks relief that would delay court proceedings by other litigants [it] must make a strong showing of necessity because the relief would severely affect the rights of others." *Commodity Futures Trading*, 713 F.2d at 1484. "[A]bsent an extraordinary or unique burden imposed by the discovery at issue," courts often find that "on balance, a consideration of the first two *String Cheese* factors weighs against the imposition of a stay." *Wells v. Dish Network, LLC*, No. 11-cv-00269-CMA-KLM, 2011 WL 2516390, at *2 (D. Colo. June 22, 2011); *Estate of McClain*, No. 20-cv-2389-DDD-NRN, at *4 (quoting *Estate of Ronquillo*, 2016 WL 10842586, at *4) ("While this court understands that discovery may burden the Individual Defendants involved in this action and distract from their core professional responsibilities, such is always the case for witnesses in civil litigation . . . Defendants have established no particularized facts that demonstrate they will suffer a clearly defined and serious harm associated with moving forward with discovery.").

The Defendants have shown no particularized facts demonstrating they will suffer a clearly defined and serious harm by moving forward with discovery. In fact, Defendants' *only* argument as to their burden is that "Defendants are public entities and employees and are therefore required to use public funds to pay for this case to be litigated." That is true in every civil rights case. It also ignores the role that insurance plays in these cases. Defendants articulate no burden at all apart from the ordinary expenses of discovery. This single conclusory assertion is insufficient to satisfy the Defendants' burden as the moving party. *Kaufman v. Univ. of Colorado*, No. 15-CV-00406-LTB-NYW, 2015 WL 4748987, at *2 (D. Colo. Aug. 12, 2015) ("Defendants have established no particularized facts that demonstrate there will be a clearly defined and serious harm associated with moving forward with discovery."); *Marks*, 2017 WL 491190, at *3 (holding that the moving party "must show specific facts demonstrating that the challenged discovery will result in a clearly defined and serious injury to the party seeking protection").

As this Court has noted, "Defendants always are burdened when they are sued, whether the case ultimately is dismissed; summary judgment is granted; the case is settled; or a trial occurs. That is a consequence of our judicial system and the rules of civil procedure. There is no special burden on the defendant in this case." *Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419-PSF-BNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007) (denying *unopposed* motion to stay). As Defendants note, they have already produced their initial disclosures. Any purported burden is routine and insufficient to justify a blanket stay on discovery.

  C. *Convenience to the Court, the Interests of Third Parties, and the Public Interest Are All Served by Allowing Discovery to Proceed*

Proceeding with discovery promotes the Court's interest in efficiently managing its docket. The general policy in this District not to stay discovery pending a ruling on a motion to

dismiss recognizes "the burdens to the court and to the public in delaying, potentially for months, those cases where a motion to dismiss is filed." *McGinn*, 640 F. Supp. 3d at 1076 (quoting *Sutton v. Everest Nat'l Ins. Co.*, No. 07-cv-00425-WYD-BNB, 2007 WL 1395309, at *2 (D. Colo. May 9, 2007)). A stay is not an efficient use of judicial resources because of the impact it will have on a court's management of the case and its docket. *Patterson v. Santini*, No. 11-cv-01899-RM-KLM, 2014 WL 349085, at *3 (D. Colo. Jan. 31, 2014) ("It is not convenient for the Court to have stale cases cluttering its docket.").

Given the Defendants' motion to dismiss is unlikely to succeed, the burden to the Court of staying discovery is significant. Defendants' motion to dismiss relies heavily on Defendants' own factual assertions not found in the Complaint. Defendants have a thinly developed qualified immunity defense in an area of law that is well-developed. They devote minimal argument to qualified immunity, just the bottom third of the last page of their motion. Doc. 50, at 15. Under these circumstances, the individual, non-police officer Defendants are not entitled to avoid litigation, causing substantial harm to Plaintiff, merely by raising a qualified immunity defense in conclusory fashion. *See Tanner*, 21-cv-02340, at 9 ("Given the probability of the [motion to dismiss] being [denied] at least as to some Defendants, and in light of the specific circumstances of the case, it is in the interests of justice to proceed to discovery.") This is especially true considering that "both statistically and in consideration of the burden on the moving party, there is a substantial likelihood [Defendants] will not prevail on" their Motion to Dismiss. *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07-cv-01145-DME-KMT, 2008 WL 5101341, at *8 (D. Colo. Nov. 26, 2008).

A delay in normal court proceedings similarly harms the interests of third parties and the public interest. As a general matter, "the public interest underlying all lawsuits is that they be

resolved as fairly and quickly as possible." *Stinnett*, 2020 WL 9258440, at *3 (internal quotation marks and citation omitted); *see also Pandaw Am.*, 2012 WL 14255, at *6. Delay is "of social concern" because it "is cost prohibitive and threatens the credibility of the justice system." *Chavez*, 2007 WL 683973, at *2.

> The relation between case disposition time and civil justice goals is straightforward . . . . Delays in the resolution of civil disputes erode public confidence in the civil justice system, disappoint and frustrate those seeking compensation through the legal system, and generate benefits for those with the financial ability to withstand delays or otherwise benefit from them. Such factors, individually and collectively, undermine public faith and confidence in the ability of our civil justice system to operate efficiently and, more importantly, equitably.

Michael Heise, *Justice Delayed: An Empirical Analysis of Civil Case Disposition Time*, 50 Cas. W. Res. L. Rev. 813, 814-15 (2000).

In this case, the social concern related to delayed discovery is of particular import because Plaintiff's allegations call into question the good faith of Defendants and the public institution that employs them and raise serious First Amendment concerns. There "is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs." *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022) (holding right to film the police is clearly established). The First Amendment focuses on public concerns, not individual interests. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Pryor v. School District No. 1*, 99 F.4th 1243, 1254 (10th Cir. 2024) (affirming preliminary injunction permitting individual to continue to go to school district property to criticize school officials). "Vindicating First Amendment freedoms is clearly in the public interest." *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005). As the District Court for the Western District of Oklahoma explained:

> It is no coincidence that the very first of the constitutional amendments addresses the freedom of speech. The framers undeniably understood that, so long as there was government, there would be those in power seeking to subvert or suppress the people's right to criticize it. This country had just declared its independence from a monarchy hostile to free and open discussion. Therefore, despite creating a system of limited government and enumerated powers, the framers recognized then—as we do now—that the right to free speech is a fundamental prerequisite to the success of the republic. This, no doubt, is what separates this country from authoritative regimes, where government control over information and the press stifles public discourse and suppresses dissent.

*Nexstar Media, Inc. v. Walters*, 776 F. Supp. 3d 1053, 1060 (W.D. Okla. 2024). Based on the clear public interest in free speech and prompt vindication of free speech rights, the Tenth Circuit has frequently affirmed the issuance of preliminary injunctions to protect First Amendment freedoms. *E.g.*, *Pryor*, 99 F.4th 1243; *Pac. Frontier*, 414 F.3d 1221.

As a more general matter, the public has a clear interest in making sure that public institutions abide by the U.S. Constitution, and thus also has a clear interest in speedy resolution of this case. *Morgan v. Clements*, No. 12-cv-00936-REB-KMT, 2013 WL 950876, at *5 (D. Colo. Mar. 12, 2013). The Complaint raises serious questions about how issues of free speech and access to government are addressed in Englewood. The public has an interest in the resolution of these questions and in the testimony of Englewood personnel who were involved. *See Tanner*, 21-cv-02340, at 10 ("[I]t is in the public interest for this case to proceed" because the "Complaint raises serious questions about how inmates are treated at CDOC" and "the public has an interest in the resolution of those questions and in the testimony of CDOC personnel who were involved."). Accordingly, considering the interests this Court must balance, the Defendants' requested stay of discovery is not justified or warranted.

For these reasons, the Motion to Stay should be denied.

Dated: October 29, 2025.

Respectfully submitted,

s/ Jamie Hubbard
Jamie Hubbard
Carey Bell
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone/Fax:    720.689.8909
Email:    hubbard@slhlegal.com
bell@slhlegal.com

*Attorneys for Plaintiff Regan Benson*

## Certificate of Service

I certify that on October 29, 2025, I electronically filed the foregoing *Regan Benson's Response to Defendants' Motion to Stay Discovery* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Nancy Hickam
Nancy Hickam, Paralegal

14