# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-CV-1571-RMR-KAS

REGAN BENSON,

    Plaintiff/Counterclaim Defendant,

v.

ENGLEWOOD, COLORADO, a Colorado municipal corporation

and

OTHONIEL SIERRA, in his individual and official capacity,
JOE ANDERSON, in his individual and official capacity,
SERGIO RENTERIA, in his individual and official capacity,
BETHANY LAFFERTY, in her individual and official capacity
CORINNE BARNETT, in her individual and official capacity,
JEAN MULDER, in her individual and official capacity,
AARON GLEE, in his individual and official capacity,
CARRIE WATSON, in her individual and official capacity, and

    Defendants

and

TAMARA NILES, in her individual and official capacity, and
SHAWN LEWIS, in his individual and official capacity.

    Defendants/ Counterclaim Plaintiffs.

---

**Regan Benson's Reply in Support of Special Motion to Dismiss Amended Counterclaim**

---

    Plaintiff Regan Benson ("Ms. Benson"), through counsel, submits this reply in support of her Special Motion to Dismiss Ms. Niles and Mr. Lewis's counterclaim for defamation.

A.        **The Special Motion to Dismiss is Procedurally Appropriate and Timely**

The issue of whether a statement is defamatory is a legal question commonly resolved through a Rule 12(b)(6) motion to dismiss. *See, e.g., Brown v. O'Bannon*, 84 F. Supp. 2d 1176, 1181 (D. Colo. 2000). Colorado's anti-SLAPP law authorizes the filing of a special motion to dismiss that permits submission of affidavits and materials outside the pleading at an early stage in the litigation. *Id*. § 13-20-1101(special motion must be filed within 63 days of service and a hearing held within 28 days of service of the special motion). While an anti-SLAPP special motion to dismiss does not fit nicely inside the Federal Rules of Civil Procedure, no court has held that a party must comply with summary judgment procedures or practice standards applicable to summary judgment motions when filing an anti-SLAPP motion that includes a supporting affidavit.

The instant Motion can be decided as a matter of law based exclusively on the Amended Counterclaim and the links included therein. Should the Court deem it necessary and/or appropriate, both parties have also submitted affidavits in support of their position as explicitly permitted by C.R.S. § 13-20-1101. Neither party points to any additional discovery that would assist in determining whether Ms. Benson's statement was defamatory as a matter of law. The Special Motion to Dismiss is ripe for ruling.

B.        **Ms. Benson's Response Regarding Statement of Facts**

Despite there being no procedural requirement that the parties admit and deny facts in numbered paragraphs on an anti-SLAPP special motion to dismiss, Ms. Benson responds to Counterclaim Plaintiffs' numbered paragraphs regarding factual allegations as follows:

Paragraphs 1-3. The nature of Ms. Benson's non-profit and effectiveness of her advocacy are not material facts for purposes of the instant motion as the parties have stipulated that the first prong of the anti-SLAPP standard is satisfied.

Paragraphs 4-5. How an ordinary person would have understood Ms. Benson's statement about "playing frickin' cornholie" is a question of law, not fact. *Fry v. Lee*, 2013 COA 100, ¶ 20. The same is true for whether the statement was hyperbole. *Mink v. Knox*, 613 F.3d 995, 1106 (10th Cir. 2010). Analysis regarding these legal questions appears below.

Paragraph 6. Whether Ms. Niles and Mr. Lewis were "attentive" during Ms. Benson's public comment is not material to the legal question raised here.

Paragraphs 7-8. The contents of these videos speak for themselves. However, the only time Ms. Benson used the term "cornhole" in reference to Ms. Niles and Mr. Lewis was during public comment on May 19, 2025. As this is the only allegedly defamatory statement at issue in this case, Ms. Benson's comments during the July 25 and August 4 videos are not material.

Paragraph 9. Ms. Benson denies that Google search results uniformly show the first result when searching "define cornholing" to be "have anal intercourse with (someone)." Google's search engine algorithm customizes its results based on a user's history and "tries to guess what you want to find." *See* Google Search Help, "Personalization & Google Search Results," https://support.google.com/websearch/answer/12410098?hl=en; "How Search works with your activity," https://support.google.com/websearch/answer/10909618 (accessed November 11, 2025). Google returns different results when the same search is run by someone who has not previously linked cornhole with sexual activity. (Ex.1, Decl. of Nancy Hickam.)

Paragraph 10. Ms. Benson has no reason to question the assertion that Ms. Niles is married but denies that her comment about "playing frickin' cornholie" was an accusation of

3

sexual misconduct. Regardless, how Ms. Niles interpreted the statement and how Ms. Benson intended the statement are irrelevant; the salient issue is whether an ordinary listener would have understood the statement as an accusation of sexual misconduct.

<u>Paragraphs 11-13</u>. Ms. Benson's statements in the July 25 and August 4 videos speak for themselves. Counterclaim Plaintiffs are misconstruing such statements and taking them out of context. Regardless, any subjective meaning attached to the statement by Ms. Benson is immaterial; the salient issue is whether an ordinary listener would have understood the statement as an accusation of sexual misconduct.

<u>Paragraph 14</u>. Ms. Benson does not deny that her videos have been seen by others.

<u>Paragraphs 15-16</u>. These paragraphs contain legal argument, not factual assertions.

<u>Paragraphs 17-18</u>. The facts in paragraphs 17-18 go to elements not at issue in the Special Motion to Dismiss. These facts are not material to whether Ms. Benson's "playing frickin' cornholie" statement is defamatory as a matter of law.

**C.    Ms. Benson's Statement is Not Defamatory as a Matter of Law**

For purposes of the special motion to dismiss, the only element of the defamation claim at issue is whether Ms. Benson's statement is defamatory as a matter of law.[1]

1. <u>The Applicable Standard is How a Reasonable or Ordinary Listener Would Have Understood the Statement</u>

Counterclaim Plaintiffs spend the bulk of their response arguing that the motion should be denied because Ms. Benson subjectively intended her "playing frickin' cornholie" statement

---

[1] Such focus does not waive Ms. Benson's ability to challenge other elements of the defamation claim—if necessary—at a later stage of the litigation. For example, Ms. Benson may choose to challenge malicious intent and actual/special damages on summary judgment if the defamation claim survives to that point.

to imply sexual conduct. (ECF No. 76 at 11-12.)

Ms. Benson's subjective intent is irrelevant. Defamation is intended to guard against reputational harm caused by publishing a false statement to others. The salient issue is how an ordinary or reasonable listener would have interpreted the statement; not how the speaker subjectively intended their words to be taken. That is why well-established Colorado law—based on long-standing Supreme Court precedent—requires the Court to view the legal question of whether a statement is defamatory through the lens of how the statement would have been understood by a reasonable listener. *Fry v. Lee*, 2013 COA 100, ¶ 34 ("[I]n considering a defamation claim, a court must determine how the publication would have been understood by a reasonable or average lay reader."); *Coomer v. Make Your Life Epic LLC*, 780 F. Supp. 3d 1129, 1145 (D. Colo. 2025) ("The relevant inquiry is how a reasonable person would have understood Defendants' statements …"). Counterclaim Plaintiffs cite no authority suggesting otherwise.

To counteract Ms. Benson's dictionary definition for "cornhole" showing it be a recreational game played with beanbags, Counterclaim Plaintiffs point to a screenshot of google search results showing that their results when searching "define cornholing" using the Google search engine showed "having anal intercourse with (someone)." (ECF No. 59 ¶ 15; ECF No. 76 at 12.) First, Counterclaim Plaintiffs cite no authority showing that courts interpret the meaning of terms or phrases using Google search results. Second, Google search results are not a reliable indicator of how an ordinary person would understand a term. Google's algorithm customizes search results for each individual user based on "what you like and your activity. It's like Google tries to guess what you want to find." *See* Google Search Help, "Personalization & Google Search Results," https://support.google.com/websearch/answer/12410098?hl=en; "How Search works with your activity," https://support.google.com/websearch/answer/10909618 (both

5

accessed November 11, 2025). Given Counterclaim Plaintiffs' fixation on the idea that Ms. Benson was accusing them of sexual misconduct, it makes sense that the Google algorithm would return results linking the definition of "playing cornholing" to a sexual act. However, when a google search is performed by a user whose prior internet activity does not tie the concept of cornhole to sexual activity, Google's algorithm produces results connecting "playing cornholie" and "playing cornholing" to the beanbag game. (Decl. of Nancy Hickam, Ex. 1.) The differences between these Google search results demonstrates why these kinds of personalized, algorithmically-generated sources are not relied on by courts when discerning the plain and ordinary meaning of terms for purposes of a defamation claim.

Colorado law requires courts to look at "recognized dictionaries" when determining the plain and ordinary meaning of a term or phrase. *See BonBeck Parker, LLC v. Travelers Indemnity Co.*, 14 F.4th 1169, 1177 (10th Cir. 2021) (citing *Renfandt v. N.Y. Life Ins. Co.*, 419 P.3d 576, 580 (Colo. 2018). The Tenth Circuit and Colorado Supreme Court have both explicitly approved Webster's Dictionary as a reliable source for this purpose. *E.g., NBC Subsidiary, Inc. v. Living Will Center*, 879 P.2d 6, 13 (Colo. 1994); *Anderson v. Cramlet*, 789 F.2d 840, 844 (10th Cir. 1986). As noted in Ms. Benson's Motion, Webster's Dictionary defines cornhole as a lawn game played using beanbags. This dictionary definition shows an ordinary listener would not have understood Ms. Benson's "playing frickin' cornholie" statement to be defamatory.

2. <u>The Defamatory Meaning of Ms. Benson's Statement Must Be Apparent from the Statement Itself Without Reference to Extrinsic Evidence</u>

Throughout the response brief, Counterclaim Plaintiffs point to Ms. Benson's comments during videos posted to YouTube on July 25 and August 4, more than two months after the statement at issue in the defamation claim. To be clear, nothing said in the July 25 and August 4

6

videos is the subject of the defamation claim. As pled, the Amended Counterclaim brings a single claim for defamation based on Ms. Benson's public comment at the May 19, 2025 City Council meeting in which she called out Counterclaim Plaintiffs for "playing frickin' cornholie" instead of doing their job by helping an under-resourced Englewood resident. (ECF No. 59, ¶ 14.) During conferral on the instant Motion, counsel for Ms. Niles and Mr. Lewis confirmed that the only defamatory statement pled in the Amended Counterclaim was the May 19 "cornholing" statement and that the July 25 and August 4 videos were referenced purely to support that claim. (Ex. 2, email from attorney Tiffany Toomey.)

In their Amended Counterclaim, Ms. Niles and Mr. Lewis were explicit about the fact that they were bringing a claim of defamation *per se*. *See* Am. Counterclaim, ECF No. 59, ¶ 32 ("Defamatory statements related to serious sexual misconduct are defamation *per se*."). To state a claim for defamation *per se*, the defamatory meaning of the statement at issue must be "apparent from the face of the publication." *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004). Ms. Benson's comments during the July 25 and August 4 videos—made over two months later—cannot be considered in determining whether the May 19 statement was defamatory on its face.[2]

Colorado law requires that a court consider "how the statement is phrased, the context, and the surrounding circumstances, including the medium through which the statement is made and the audience to whom it is directed" when determining whether a statement is defamatory.

---

[2] Counterclaim Plaintiffs appear to be confusing the concepts of defamation *per quod*—which permits reference to extrinsic evidence when determining defamatory meaning—with defamation *per se*. But in addition to the Amended Counterclaim explicitly stating that Ms. Niles and Mr. Lewis were bringing a claim for defamation *per se*, they also failed to plead any special damages. *Lind v. O'Reilly*, 636 P.2d 1319, 1321 (Colo. App. 1981) (dismissing claim for defamation *per quod* for failure to plead special damages). To the extent Counterclaim Plaintiffs are attempting to amend their defamation claim to include a *per quod* theory, the Court should reject such efforts due to the lack of special damages.

7

*See, e.g., Coomer v. Donald Trump for President*, 2024 COA 35, ¶ 131; *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1111 (10th Cir. 2017). But the relevant context for determining whether a statement is defamatory on its face is the circumstances of the statement itself. Counterclaim Plaintiffs do not cite any authority for their argument that the Court should consider what the same person said two and three months later as "context" for the allegedly defamatory statement.

   Counterclaim Plaintiffs' citation to *Creekside Endodontics v. Sullivan*, No. 2020CV30024, 2021 WL 9958455 (Colo. Dist. Ct., Saguache Cty., Mar. 18, 2021) is unavailing. First, this decision by a District Court Judge in Saguache County has no precedential value in the Colorado state court system, much less in federal court. Second, *Creekside* does not stand for the proposition that a court should consider statements made two and three months later when determining how a reasonable and ordinary listener would have understood the statement at issue in a defamation claim. Rather, the *Creekside* court held that an online review was reasonably interpreted as fact rather than opinion because the writer had included several x-ray photographs along with her review. 2021 WL 9958455, at *10. Ms. Benson did not engage in any kind of similar substantiation for the "playing frickin' cornholie" statement during her May 19 public comment at the City Council meeting.

   Here, the context of Ms. Benson's statements during public comment at the May 19 City Council meeting—taken as a whole—shows an ordinary listener would not have understood her "playing frickin' cornholie" comment as referencing sexual misconduct. The statement was made in the middle of a rant about how Englewood government officials were bad at their jobs, ignored their citizens' needs, and were going to be exposed in the lawsuit she had filed earlier that day. Her tone conveyed frustration with these officials, similar to the ALL CAPS screed the

8

*Keohane* court found to be hyperbole. The "playing frickin' cornholie" comment was made in the middle of a public meeting that was livestreamed on the internet. Ms. Niles and Mr. Lewis were sitting in plain view just a few feet away when the comment was made. Because an ordinary listener would not have understood Ms. Benson's "playing frickin' cornholie" statement to be implying sexual misconduct, the statement is not defamatory as a matter of law.

3. <u>No Material Fact Disputes Preclude Ruling on whether Ms. Benson's Statement was Defamatory as a Matter of Law</u>

Counterclaim Plaintiffs state in a conclusory fashion that "significant disputes of material fact" exist over the context and meaning of Plaintiff's "playing frickin' cornholie" statement. But the record belies this statement. The plain and ordinary meaning of a term is determined by reference to dictionary definitions. Only one dictionary definition has been put forward by the parties. Whether a statement is hyperbole is a determination of law for the Court, not a dispute of fact. Counterclaim Plaintiffs' repeated references to Ms. Benson's comments in the July 25 and August 4 videos do not create a factual dispute about how an ordinary person would have understood her May 19 statement.

Even the context in which Ms. Benson made the "playing frickin' cornholie" comment is not in dispute. Her entire public comment is preserved on video that is linked to in the Amended Counterclaim. While Ms. Benson's Declaration provides additional background information regarding the physical setting depicted in the video and parts of her public comment, Counterclaim Plaintiffs do not dispute any of these facts.

**D.     The Fees Issue is Premature**

There is no fee request currently pending for the Court to address as Ms. Benson has not yet filed a motion seeking fees under Colorado's anti-SLAPP laws.

## Conclusion

For the reasons set forth herein and in the original Special Motion, Counterclaim Plaintiffs have not shown a reasonable likelihood of prevailing on their defamation claim and such claim should be dismissed.

Dated: November 12, 2025.

Respectfully submitted,

*S/ Jamie Hubbard*
Jamie Hubbard
Carey Bell
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone/Fax:    720.689.8909
Email:    hubbard@slhlegal.com
bell@slhlegal.com

*Attorneys for Plaintiff Regan Benson*

**Certificate of Service**

       I certify that on November 12, 2025, I electronically filed the foregoing *Regan Benson's Reply in Support of Special Motion to Dismiss Amended Counterclaim* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                          *s/ Nancy Hickam*
                                          Nancy Hickam, Paralegal