IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01571-RMR-KAS

REGAN BENSON,

     Plaintiff/Counter Defendant,

v.

TAMARA NILES, in her individual and official capacity, and
SHAWN LEWIS, in his individual and official capacity,

     Defendants/Counter Claimants,

and

ENGLEWOOD, COLORADO, a Colorado municipal corporation,
OTHONIEL SIERRA, in his individual and official capacity,
SERGIO RENTERIA, in his individual and official capacity,
BETHANY LAFFERTY, in her individual and official capacity,
CORINNE BARNETT, in her individual and official capacity,
JEAN MULDER, in her individual and official capacity, and
AARON GLEE, in his individual and official capacity.

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on Plaintiff's **Special Motion to Dismiss Amended Counterclaim** [#69] (the "Motion"). Defendants Tamara Niles and Shawn Lewis filed a Response [#76], and Plaintiff filed a Reply [#79]. The Motion [#69] has been referred to the undersigned for a Recommendation[1] pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See Order Referring Motion* [#70]. On

_____

[1] All parties do not consent to magistrate judge jurisdiction. *See Signed Consent/Non-Consent Form* [#26]; *Order Referring Case* [#28].

review of the briefing, the Court ordered supplemental briefing concerning the basis for this Court's subject matter jurisdiction. *See Minute Order* [#89]. Defendants filed a Supplemental Brief [#91], and Plaintiff filed a Response [#93]. The Court has reviewed the briefs, the case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that Plaintiff's Motion [#69] be **GRANTED**.

## I.     Background

In this civil rights action, Plaintiff Regan Benson sues the City of Englewood and various City employees pursuant to 42 U.S.C. § 1983 for alleged First Amendment violations. Plaintiff describes herself as an "outspoken advocate for the homeless in Englewood." *Am. Compl.* [#36] at 2. Her advocacy includes observing and speaking at public meetings, filing public records requests, filing complaints against the Englewood Police Department, and filming interactions with public officials and publishing them to her YouTube channel. *Id.* at 2, 5. She filed her original complaint on May 18, 2025, alleging First Amendment retaliation related to two criminal prosecutions against her and exclusion orders prohibiting her from entering the Englewood Public Library and Englewood City Council meetings. *See generally id.*

The Court discussed the incidents, each taking place in 2024, in detail in its Recommendation on the Defendants' Motion to Dismiss [#50]. *See Recommendation* [#83] at 3-4. To summarize, Plaintiff was temporarily excluded from the Englewood public library and from the room where City Council meetings are held, and she was charged with two counts of misdemeanor harassment and two counts of impeding a public official or employee in a public building, in connection with her advocacy-related conduct. *Id.* That conduct included filming City employees and declining to provide her address before

speaking during a City Council public comment period. *Id.* Plaintiff's theory of the case is that Defendants conspired to silence her and retaliate against her, through the temporary exclusions and criminal charges, because they did not approve of the content of her speech. The Court thoroughly analyzed Plaintiff's eleven claims for relief in its prior Recommendation [#83], and District Judge Regina M. Rodriguez adopted the Court's Recommendation, dismissing some claims and two City employees from the action while allowing others to proceed. *See Recommendation* [#83]; *Order Adopting Recommendation* [#84].

For their part, Defendants assert that Plaintiff "uses deliberately antagonistic tactics—including harassment, in-person bullying, cyberbullying, intimidation, and public humiliation—to provoke reactions for sensationalized YouTube content." *Am. Countercl.* [#59] at 1. Therefore, in response to her lawsuit, Defendants asserted three counterclaims against Plaintiff. *Countercls.* [#24] at 6-8. However, they later amended their counterclaims such that only Defendants Niles and Lewis proceeded to assert one counterclaim of defamation against Plaintiff. *Am. Countercl.* [#59] at 5-6.

In support of their defamation counterclaim, Defendants Lewis and Niles point the Court to a May 19, 2025 YouTube video[2] that Plaintiff posted of herself at an Englewood City Council meeting, during which she referenced this lawsuit and stated, "you got Shawn and Tamara . . . playing fricking 'cornholing' with each other" (referring to Defendants Shawn Lewis and Tamara Niles). *Am. Countercl.* [#59] ¶ 14. Defendants Lewis and Niles theorize that Plaintiff's "cornholing" statement implied that they had engaged in an extra-marital affair with one another and therefore allege that Plaintiff

---

[2] *See* REGAN BENSON, *GUESS WHO is GETTING SUED*, at 47:24 (YouTube, May 19, 2025), https://www.youtube.com/watch?v=PAvJ4Y1YJHE

"publicized defamatory statements and video of Defendants Niles and Lewis on her YouTube channel." *Id.* ¶ 27.

On April 29, 2026, the Court ordered the parties to file supplemental briefing to address on what ground the Court could exercise subject matter jurisdiction over Defendants' counterclaim. *See Minute Order* [#89]. The Court observed that "the Amended Counterclaim, a defamation claim under state law, arises from Plaintiff's statements concerning a topic that is entirely unrelated to Plaintiff's statements regarding the City's policies on homelessness and occurred at a city council meeting that is different from the meetings from which Plaintiff's claims arise." *Id.* "In other words, the Amended Counterclaim does not appear to derive from a common nucleus of operative fact as Plaintiff's claims." *Id.*

## II.    Legal Standards

### A.    Fed R. Civ. P. 12(h)(3)

Rule 12(h)(3) requires courts to dismiss an action if at any time it determines it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3); *see also Gwilt v. Harvard Square Ret. & Assisted Living*, 537 F. Supp. 3d 1231, 1236 (D. Colo. 2021) ("In every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires *sua sponte* action."). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) (emphasis omitted). "As federal courts are courts of limited jurisdiction and require both constitutional and statutory authority in order to adjudicate a case, and because important values of federalism and separation of powers

are implicated in the limited jurisdiction of federal courts, we are mindful of our duty to avoid deciding what we have no authority to decide." *Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004).

**B.    28 U.S.C. § 1367(a)**

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

The test for determining whether claims form part of the same case or controversy comes from *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), in which the Supreme Court held that "the state and federal claims must derive from a common nucleus of operative fact" in order for the court to have supplemental subject matter jurisdiction. *See also Price v. Wolford*, 608 F.3d 698, 702-03 (10th Cir. 2010). "[A] 'mere tangential overlap of facts . . . is insufficient to confer supplemental jurisdiction.'" *See Schaeffer v. JBS Carriers, Inc.*, No. 19-cv-01406-NYW, 2020 WL 7043867, at *21 (D. Colo. Dec. 1, 2020) (quoting *Barr v. Diguglielmo*, 348 F. App'x 769, 774 (10th Cir. 2009)).

When deciding whether to exercise supplemental jurisdiction, courts should consider values of "judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quotation omitted). "[T]he Supreme

Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion." *Est. of Harshman*, 379 F.3d at 1165.[3]

### III.     Analysis

Defendants argue in their supplemental brief that their counterclaim and Plaintiff's First Amendment retaliation claims arise from a common nucleus of operative fact, while Plaintiff argues the opposite. *See generally Defs.' Suppl. Br.* [#91]; *Pl. Suppl. Br.* [#93]. Defendants characterize Plaintiff's allegedly defamatory statements as being related to "the same government conduct alleged in her claims, involv[ing] the same parties, and discuss[ing] the same lawsuit underlying Plaintiff's claims[.]" *See Defs.' Suppl. Br.* [#91] at 2. Plaintiff argues that there is no overlap between her First Amendment claim and Defendants' counterclaim, as the statement "occurred months after the issues underlying her lawsuit." *See Pl. Suppl. Br.* [#93] at 2-3.

The parties point the Court to several cases, and the Court has identified a few more, illuminating how the "common nucleus of operative fact" test operates in practice. In *Schaeffer*, 2020 WL 7043867, at *6-8, the plaintiff brought discrimination and retaliation claims against her former employer after she was terminated following a dispute with her supervisors related to the company's worker's compensation policy. Defendant filed

---

[3] As noted by District Judge Wang in *Schaeffer*, 2020 WL 7043867, at *20 n.10, the Tenth Circuit previously determined supplemental jurisdiction over counterclaims based on whether the counterclaim was compulsory or permissive. Since the enactment of § 1367 in 1990, it is unclear whether this compulsory/permissive distinction still applies. *See, e.g*, *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2008 WL 640733, at *1 n.1 (D. Kan. Mar. 6, 2008)("Since Congress enacted Section 1367 in 1990, [however,] the Tenth Circuit has not determined whether supplemental jurisdiction over counterclaims depends on the compulsory/permissive distinction."); *Crow v. Uintah Basin Elec. Telecomms.*, No. 2:09-cv-1010, 2010 WL 5069852, at *4 n.30 (D. Utah Dec. 6, 2010) (noting that the Tenth Circuit has not yet indicated whether the compulsory/permissive distinction still applies). Here, the jurisdictional analysis would yield the same outcome under both the compulsory/permissive analysis and the § 1367 analysis.

counterclaims alleging "conversion, civil theft, and breach of contract" related to "[p]laintiff's alleged misuse of confidential employee information" discovered "more than two years after [plaintiff]" had left the company. *Id.* at *20-21. The court determined that the counterclaims "d[id] not derive from the same nucleus of operative fact as Plaintiff's . . . claims" because they would require distinct evidence and had a significant temporal gap. *See id*. at *21.

Alternatively, another court in this District found that claims derived from a common nucleus of operative fact when the "factual and legal theories of the claims [were] intertwine[d.]" *Ott v. Chacha in Art LLC*, No. 18-cv-01135-LTB-GPG, 2019 WL 10252743, at *3 (D. Colo. May 1, 2019). There, the plaintiff brought retaliation and wage claims against his former employer after he was fired, alleging that "he was not fully paid for his work, in violation of provisions of the Fair Labor Standards Act ("FLSA") and related Colorado state law claims." *Id.* at 1. The defendant "counterclaimed that [p]laintiff breached a duty of loyalty or a fiduciary duty and intentionally interfered with a contractual relationship[,]" alleging that the plaintiff had "entered into an unauthorized transaction" with an artist that had entered into a consignment agreement with the defendant. *Id.* The court chose to exercise supplemental jurisdiction because the original claim and counterclaim both stemmed from the same incident and had a direct relationship, as the strength of defendant's counterclaim would "directly bear on the strength of plaintiff's retaliation claim." *See id.* at 3.

Similarly, another court in this Circuit found that claims do not derive from a common nucleus of operative fact when they "arise from separate occurrences . . . separated in time, space, and origin." *See Walker v. THI of N.M. at Hobbs Ctr.*, 803 F.

Supp. 2d 1287, 1324-25 (D.N.M. 2011). There, the plaintiff brought racial discrimination claims against her former employer, alleging that the defendant "unlawfully subjected her to numerous acts of racial discrimination, and terminated her employment . . . because of her race." *Id.* at 1293. Defendant filed a counterclaim for malicious abuse of process and punitive damages, alleging that plaintiff "filed claims without probable cause and engaged in acts in the use of process other than such as would be proper in the regular prosecution of the claim." *Id.* The court chose not to exercise supplemental jurisdiction because "the facts upon which [plaintiff's] claims are based relate to [plaintiff's] employment . . . and how she was treated during her employment," while "the facts upon which the Counterclaim are based relate to [plaintiff's] actions in filing her Complaint and amended Complaints, and her actions in the litigation." *Id.* at 1324. Further, the court noted that even though "[s]ome of the evidence will be the same, and there is some overlap of facts," "sending both claims to the jury at one time may confuse the jury." *Id.*

Defendants contend that "Plaintiff's claims and Defendants' counterclaims require much of the same evidence and involve the same parties and witnesses," *Defs.' Suppl. Br.* [#91] at 4, relying on *Jones v. Addictive Behavioral Change Health Group., LLC*, 364 F. Supp. 3d 1257, 1264 (D. Kan. 2019). In *Jones*, however, the court elected to exercise supplemental jurisdiction because, "[p]ut simply, Plaintiff's FLSA claim is to recover underpaid wages, whereas Defendant's counterclaim is to recover overpaid wages," finding "a logical relationship between the facts and evidence needed" to prove both parties' claims. 364 F. Supp. 3d at 1264. Additionally, the court determined that "[a] simultaneous determination of the claims [would be] necessary to calculate . . . damages." *Id.* Here, Plaintiffs underlying retaliation claim and Defendants' defamation counterclaim

do not share a similar logical relationship such that it would serve judicial economy to adjudicate both claims together. Presenting a jury with both the retaliation claims and defamation counterclaim will likely cause confusion rather than expedite the process. *See Walker*, 803 F. Supp. 2d at 1324.

Contrary to Defendants' assertions, the defamation counterclaim will require distinct evidence and witnesses from Plaintiff's retaliation claims. Plaintiff's retaliation claims focus on her protected speech activities in 2024. To prove her claims, Plaintiff will require witnesses who observed those activities, evidence of the timing and circumstances of any adverse actions, and proof that her protected speech motivated the alleged retaliation. *See generally Pl. Am. Compl.* [#36]. Defendants' counterclaim, however, would focus on Plaintiff's "cornhole" comment in her May 19, 2025 YouTube video. To prove their claim, Defendants will require evidence of the statement, its veracity, Plaintiff's knowledge of its veracity (or lack thereof), and damages for "injury to reputation, embarrassment, humiliation, or mental anguish." *See Defs.' Am. Countercl.* [#59] at 6. The fact that the counterclaim involves the same parties and has a tangential relation to the underlying retaliation claim is not sufficient to confer supplemental jurisdiction. *See Schaeffer*, 2020 WL 7043867, at *21; *Walker*, 803 F. Supp. 2d at 1324. Additionally, Defendants' counterclaim has no bearing on the strength of Plaintiff's retaliation claims, and the underlying factual and legal theories are not sufficiently intertwined, unlike the claims in *Ott*, 2019 WL 10252743, at *3. *See also OL Priv. Couns., LLC v. Olson*, No. 2:21-cv-00455, 2022 WL 617033, at *5 (D. Utah Feb. 10, 2022) (declining to exercise supplemental jurisdiction where claims turned on different facts and different evidence), *report and recommendation adopted*, 2022 WL 613293 (D. Utah Mar. 2, 2022). Rather,

the two claims are "separated in time, space, and origin," as the alleged defamatory statement took place at least one year after any alleged retaliation. *Walker*, 803 F. Supp. 2d at 1325; *Schaeffer*, 2020 WL 7043867, at *21; *see also Vox Mktg. Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1290 (D. Utah 2021) (finding that defendant's counterclaim did not arise from a common nucleus of operative fact where it had only a loose connection to the underlying claim and arose out of actions that took place after the underlying claim).

Defendants further contend that the "conduct underlying Plaintiff's claims . . . support[s] the 'actual malice' element of Defendants' counterclaims." *Defs.' Suppl. Br.* [#91] at 3. The actual malice element of a defamation claim requires the claimant to prove that the speaker communicated with "actual knowledge that [their statement] was false or with reckless disregard for whether it was true." *Rosenblum v. Budd*, 538 P.3d 354, 365 (Colo. App. 2023) (internal quotation marks and citation omitted). The Court doubts that the conduct and facts underlying Plaintiff's retaliation lawsuit would be relevant in determining whether Plaintiff had actual knowledge that her statement concerning Defendants Niles and Lewis's affair was false, or that she at least acted with reckless disregard to the falsity of her statement.

In sum, Defendants' counterclaim and Plaintiff's First Amendment retaliation claim do not derive from a common nucleus of operative facts. Thus, the Court lacks supplemental jurisdiction over Defendants' counterclaim pursuant to 28 U.S.C. § 1367(a).

## IV.    Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#69] be **GRANTED** for the reasons outlined in Plaintiff's Supplemental Brief [#93] and that Defendants Niles and Lewis's counterclaim be **dismissed without prejudice** for lack of subject matter jurisdiction. *See Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1218 (10th Cir. 2006) ("[A] dismissal for lack of jurisdiction should be entered without prejudice.").

Dated: July 23, 2026                               BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge